625 A.2d 953

**STATE of Maryland et al.**

v.

**91ST STREET JOINT VENTURE.**

**No. 125, Sept. Term, 1991.**

Court of Appeals of Maryland.

Per Curiam Order March 10, 1992.

Opinion June 9, 1993.

Evelyn O. Cannon, Asst. Atty. Gen. (Sharon B. Benzil, Asst. Atty. Gen., Areta L. Kupchyk, Staff Atty., Atty. General's Office, and J. Joseph Curran, Jr. Atty. Gen., Baltimore), and Guy R. Ayres, III, (Ayres, Jenkins, Gordy & Almand, Ocean City), all on brief, for appellant.

Henry R. Adams, Baltimore (Stanford D. Hess, Glen P. Smith), all on brief, for appellee.

## ORDER

PER CURIAM.

For reasons to be stated in an opinion later to be filed, the Order of the Circuit Court for Baltimore City dated September 25, 1991 is hereby vacated; further proceedings in that court are hereby stayed pending determination of the litigation in the Circuit Court for Worcester County entitled

*Department of Natural Resources v. 91st Street Joint Venture,* Case No. 91CV0804 SP49/69. Costs in the Circuit Court for Baltimore City and in this Court to be paid by the appellee. Mandate to issue forthwith.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

The issue in this case is whether the Circuit Court for Baltimore City abused its discretion when it issued an interlocutory injunction notwithstanding a pending proceeding in the Circuit Court for Worcester County involving the same parties and the same issues. This opinion sets forth the reasons underlying this Court's order of March 10, 1992, vacating the order of the Circuit Court for Baltimore City, and staying further proceedings in that court pending resolution of the litigation in the Circuit Court for Worcester County.

The 91st Street Joint Venture owns the Princess Royale Ocean Suite Hotel and Condominiums in Ocean City, Worcester County, Maryland. The Joint Venture wanted to use a portion of its beachfront property, but was unsure if statutes and regulations protecting the beach area dune system would permit the use. After inconclusive discussions with the Maryland Department of Natural Resources regarding the potential uses of the property, the Princess Royale in July 1991 constructed a 14–foot by 14–foot gazebo on its property, to be used as a food and drink concession stand.

On August 8, 1991, the State Department of Natural Resources (hereinafter referred to as DNR) filed in the Circuit Court for Worcester County a complaint for injunctive and other relief, contending that "the gazebo structure placed by the Princess Royale in the Beach Erosion Control District is prohibited by law and, as such, is illegal and environmentally unsound and must be removed." The com-

plaint further alleged that the gazebo threatened irreparable harm to "the integrity of the Beach Erosion Control District." DNR requested the court to order the 91st Street Joint Venture to remove the gazebo and to issue a permanent injunction forbidding the 91st Street Joint Venture and the Princess Royale from "placing or constructing any permanent structures in the Beach Control Erosion District," and for "such other and further relief as justice may require." DNR also filed a motion for summary judgment.

The Mayor and City Council of Ocean City moved to intervene in the DNR suit.[1] Ocean City separately filed a complaint, which incorporated the allegations of DNR's complaint and, in addition, contended that the gazebo was: "a) constructed without a permit in violation of Section 34–1 of the [Ocean City] Code; b) constructed east of the building limit line in violation of Section 36–4 of the [Ocean City] Code; and c) constructed without critical area foundations in violation of Section 54–3 of the [Ocean City] Code." Ocean City sought removal of the gazebo, a permanent injunction, and "such other and further relief as justice may require."

Instead of filing any responsive pleading or motion in the Circuit Court for Worcester County, the Joint Venture on August 15, 1991, filed in the Circuit Court for Baltimore City a complaint for declaratory and injunctive relief against the State of Maryland and DNR, and later amended the complaint to include the Town of Ocean City as a defendant. The Joint Venture asserted that it had the right to file the action challenging the validity of the relevant

---

1. In its motion to intervene, Ocean City contended that the subject matter of DNR's complaint involved the State—Ocean City Building Limit Line, allegedly within which the gazebo was placed. Ocean City stated that its ordinances were being violated by the placement of the gazebo, and thus the City had an interest in the litigation because the outcome of the litigation could "affect its ordinances, statutes and agreement with the State of Maryland, relative to the State—Ocean City Building Limit Line."

regulations pursuant to the Administrative Procedure Act, Maryland Code (1984), § 10–125 of the State Government Article.[2] The complaint included a request for immediate *ex parte* injunctive relief (1) restraining the plaintiffs in the Worcester County action from enforcing certain building limit line regulations, (2) requiring them to stay the Worcester County action pending resolution of the Baltimore City action or transfer the Worcester County action for consolidation with the Baltimore City action, and (3) restraining them from enforcing the Ocean City Building Limit Line and certain portions of the "critical area" regulations.

On the same day that the complaint was filed, the Circuit Court for Baltimore City issued an *ex parte* order, restraining DNR from acting to enforce certain regulations, and ordering that DNR either not proceed with its action filed in the Worcester County court or agree to transfer the case to Baltimore City for consolidation with the Joint Venture's case. The order granted DNR leave to move for a hearing on two days' notice, and further provided that the Joint Venture was not required to file a bond pursuant to Maryland Rule BB75.

On August 28, 1991, the Circuit Court for Baltimore City entered an *ex parte* injunction against the Town of Ocean City, "enjoining Ocean City from acting alone or in concert

---

**2.** Section 10–125 of the State Government Article provides in pertinent part as follows:

"Declaratory Judgment.

"(a) *Petition authorized.*—(1) A person may file a petition for a declaratory judgment on the validity of any regulation, whether or not the person has asked the unit to consider the validity of the regulation.

"(2) A petition under this section shall be filed with the circuit court for the county where the petitioner resides or has a principal place of business.

"(b) *Authority to consider.*—A court may determine the validity of any regulation if it appears to the court that the regulation or its threatened application interferes with or impairs or threatens to interfere with or impair a legal right or privilege of the petitioner."

The 91st Street Joint Venture alleges that its principal place of business is in Baltimore City, and that, therefore, venue for the declaratory judgment action is proper in Baltimore City.

with others to enforce by any means the Ocean City Building Limit Line ('OC–BLL') and the 'critical area' designation in Chapter 54 of the Code of the Town of Ocean City as the designation relates to land east of the OC–BLL pending the outcome of this action...."

The State filed a motion to vacate and dissolve the *ex parte* injunction and for a hearing, asserting, *inter alia,* that the Circuit Court for Baltimore City did not have the authority to interfere with the Worcester County action. After a hearing, the circuit court denied the State's motion. The State filed a motion to stay and a motion for reconsideration of the motion to vacate the *ex parte* injunction. The court also denied these motions but delayed entry of an interlocutory injunction so that the parties could attempt to settle the matter. Settlement efforts were unsuccessful, however, and after another hearing, the court entered an order denying the State's motion to vacate or stay the *ex parte* injunctions, and granting an interlocutory injunction against the State and Ocean City, which provided as follows:

### "ORDER

"Upon consideration of the Amended Verified Complaint and Memorandum of Law in Support thereof filed by Plaintiff, 91st Street Joint Venture ('91st Street'), the Motion to Vacate and Dissolve *Ex Parte* Injunction and 91st Street's Motion for Interlocutory Injunction against the State of Maryland and the Department of Natural Resources ('DNR'), and having heard oral argument thereon, and, further, upon consideration of 91st Street's Motion for *Ex Parte* Injunction against the Mayor and City Council of Ocean City, Maryland ('Ocean City'), and upon Ocean City's waiver of its right to a hearing before interlocutory relief can be entered against it, ... it is, this 25th day of September 1991,

"ORDERED, that the State's Motion to Vacate and Dissolve Ex Parte Injunction and the State's Motion to

Stay Ex Parte Order and/or Interlocutory Injunction or in the Alternative for Reconsideration of the Motion to Vacate Ex Parte Injunction are Denied; and it is further

"ORDERED, that an Interlocutory Injunction be and hereby is issued against DNR, restraining and enjoining DNR from acting alone or in concert with others to enforce by any means the Regulations purportedly adopted by DNR as of August 5, 1991, pending the outcome of this action; and it is further

"ORDERED, that DNR either (1) not proceed with the action filed August 8, 1991 in the Circuit Court for Worcester County, Case No. 91CV0804 ('Worcester action') pending the outcome in this action or (ii) agree to transfer the Worcester action for consolidation with this action in this Court under a new scheduling order; and it is further

"ORDERED, that an Interlocutory Injunction be and hereby is issued against Ocean City restraining and enjoining Ocean City from acting alone or in concert with others to enforce by any means the SOC–BLL against 91st Street pending the outcome of this action; and it is further

"ORDERED, that Ocean City either (i) not proceed with the action filed August 8, 1991 in the Circuit Court for Worcester County, Case No. 91CV0804 ('Worcester action') pending the outcome in this action or (ii) agree to transfer the Worcester action for consolidation with this action in this court under a new scheduling order; and it is further

"ORDERED, that Plaintiff is not required to file a bond pursuant to Md.Rule BB75."

After filing an answer to the complaint in Baltimore City, the State and Ocean City filed a notice of appeal to the Court of Special Appeals. We issued a writ of certiorari before argument in the intermediate appellate court.

The first question presented by the State and Ocean City on appeal is whether "the Circuit Court for Baltimore

City improperly exercise[d] jurisdiction over a subsequently-filed action involving the same parties and the same issues" as involved in the action already filed in the Circuit Court for Worcester County. We conclude that the Circuit Court for Baltimore City abused its discretion when it entertained the Joint Venture's action.

It has long been the rule in this State that, once a court takes jurisdiction over a particular subject matter, another court of concurrent jurisdiction generally should abstain from interfering with the first proceeding. In *Brooks v. Delaplaine*, 1 Md.Ch. 351 (1848), a creditor of the insolvent Delaplaine filed in the Frederick County Court an action for accounting against Delaplaine's trustee. Then, another creditor filed in the Court of Chancery an action for accounting against the same trustee. Upon being informed of the pending action in the Frederick County Court, the Court of Chancery dismissed the bill before it. Chancellor Johnson reasoned that parallel proceedings in the two courts would likely result in "inconsistent and conflicting decrees [being] passed with reference to the same subject-matters." 1 Md.Ch. at 353. The Chancellor went on to hold that the "only course of safety, therefore, is, when one court having the jurisdiction over the subject, has possession of the case, for all others, with merely co-ordinate powers, to abstain from any interference. Any other rule will unavoidably lead to perpetual collision, and be productive of the most calamitous results." 1 Md.Ch. at 354. If the creditors are "dissatisfied with the conduct of the trustee," the Chancellor said, "they may ... take such steps as to them may seem proper, for the vindication of their rights [in the Frederick County Court]." 1 Md.Ch. at 352–353.

Similarly, in *Withers v. Denmead*, 22 Md. 135 (1864), this Court affirmed the action of a Baltimore City court dissolving an injunction which it had issued before becoming aware that proceedings on the same subject matter had already been brought in the Circuit Court for Baltimore County. This Court, relying on Chancellor Johnson's opinion in *Brooks v. Delaplaine, supra,* explained that, if one

court enjoins parties who are subject to the jurisdiction of another court, "[t]he danger of collision is so imminent, that public policy as well as judicial comity requires that the court of co-ordinate jurisdiction, first in possession of any portion of the subject-matter, should not be disturbed by any other court." 22 Md. at 146.

This rule has been applied consistently in numerous cases. *See, e.g., Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975); *A.S. Abell Co. v. Sweeney*, 274 Md. 715, 337 A.2d 77 (1975); *Grimm v. County Comm'rs*, 252 Md. 626, 250 A.2d 866 (1969); *Loft, Inc. v. Buckler*, 148 Md. 647, 129 A. 914 (1925); *Horsey Co. v. Martin*, 142 Md. 52, 120 A. 235 (1923); *Preston v. Poe*, 116 Md. 1, 81 A. 178 (1911); *Jenkins v. Simms*, 45 Md. 532, 537 (1877); *Keerl v. Keerl*, 28 Md. 157, 160 (1868).

 There are some limited exceptions to the general rule. For example, in *Keyser v. Rice*, 47 Md. 203, 213 (1877) (emphasis deleted), this Court stated that an equity court

"had authority to restrain persons within its jurisdiction from prosecuting suits either in Courts of this State or of other States or foreign countries.

"This jurisdiction [was founded upon] the clear authority vested in Courts of equity over persons within their jurisdiction and amenable to process to restrain them from doing acts which will work wrong and injury to others, and are contrary to equity and good conscience."

In that case, a creditor of a Maryland citizen, himself a Maryland citizen, went to a Justice of the Peace in West Virginia to garnish the debtor's wages, contrary to Maryland law. The Court agreed that "it was against equity, for a creditor to evade the laws of his own [state] and thereby obtain a preference to the injury of other creditors." 47 Md. at 214. The circumstances warranting the exception in *Keyser v. Rice, supra,* are not present in the case at bar.

 Furthermore, in order for the general rule to apply at all, it is necessary that the two actions be materially the same. *See Preston v. Poe, supra,* 116 Md. at 5, 81 A.

at 179. In the instant case, the two actions are materially the same. In their complaints, the DNR and Ocean City alleged that the placement of the gazebo violated certain specific statutes, regulations and ordinances. In its complaint, the Joint Venture claimed, in essence, that the applicable statutes do not prohibit the gazebo's placement, that the regulations which purport to govern placement of the gazebo are void, and that the Ocean City ordinances were pre-empted by State law. Thus, the issues in both actions concern the validity and applicability of the same statutes, regulations, and ordinances.

■ The Circuit Court for Baltimore City should not have interfered with a suit pending in another circuit court unless there were extraordinary circumstances requiring such intervention. Although the Joint Venture argues to the contrary, there were not such extraordinary circumstances here to justify the intervention of the Circuit Court for Baltimore City. The Circuit Court for Worcester County possesses all of the same equity powers as the Circuit Court for Baltimore City, and there is no basis for concluding that the Worcester County court would not use its powers fairly to decide the equitable claims of each party.

The Joint Venture alleges, however, that it is inequitably burdened by having to defend a suit in Worcester County. In light of the Princess Royale's location in Worcester County, we are not persuaded that this is a particularly heavy burden. Moreover, if it were burdensome, the appropriate remedy is not to file a second action. Instead, the Joint Venture should have filed in the Circuit Court for Worcester County a motion under Maryland Rule 2–327(c) to transfer the action.

Similarly, the Joint Venture's alleged fear of having to participate in a "multiplicity of suits," cannot be the basis for this extraordinary intervention into a pending action. The Joint Venture itself created the multiplicity of suits by filing the action in Baltimore City. Furthermore, where a litigant is faced with a real multiplicity of suits involving

the same issues, Rule 2–327(d) furnishes the appropriate avenue for relief.

The Joint Venture additionally contends that DNR promised not to institute court action before a certain date, but filed its action before that date in violation of the agreement. The DNR denies that any agreement to that effect was ever made. Even if it were, however, the Worcester County court is competent to determine what, if anything, ought to be done about the Joint Venture's allegation. Any of the Joint Venture's other equitable concerns as to why the Worcester County action should not proceed may be raised by motion or answer in the Circuit Court for Worcester County.

■ The provision of the Administrative Procedure Act on which Joint Venture relied, § 10–125 of the State Government Article, does not justify the order of the Circuit Court for Baltimore City. The Joint Venture contends that it had the right to bring the declaratory judgment action pursuant to § 10–125 "regardless of the pendency of the Worcester County action." (Brief at 23.) In support of this contention, the Joint Venture cites *Grimm v. County Comm'rs, supra*, 252 Md. 626, 250 A.2d 866. *Grimm* does not, however, support the Joint Venture's view of this matter. Although, by statute, declaratory relief is available "notwithstanding the availability of another adequate remedy either at law or in equity," 252 Md. at 632, 250 A.2d at 869, the declaratory judgment statute does not make appropriate a declaratory judgment action to determine the same issues already before another court. 252 Md. at 636, 250 A.2d at 870.[3] *See also Brohawn v. Transamerica Ins. Co.*,

---

**3.** The Declaratory Judgment Act, Code (1974, 1989 Repl.Vol.), § 3–409(c) of the Courts and Judicial Proceedings Article, provides: "A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute." This provision, formerly codified as Code (1957), Art. 31A, § 6, was at issue in *Grimm v. County Comm'rs*, 252 Md. 626, 250 A.2d 866 (1969). The Joint

*supra,* 276 Md. at 406, 347 A.2d at 849 ("[W]here, as here, the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment"); *Watson v. Dorsey,* 265 Md. 509, 512 n. 1, 290 A.2d 530, 532 n. 1 (1972). Moreover, this Court's previously filed order vacating the order of the Circuit Court for Baltimore City simply stayed the 91st Street Joint Venture's declaratory judgment action "pending determination of the litigation in the Circuit Court for Worcester County."

In sum, the Circuit Court for Baltimore City abused its discretion when it enjoined the State and Ocean City from proceeding with the Worcester County action previously filed.

Venture does not appear to rely directly on this statutory provision in support of its argument in this Court.