REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1595

September Term, 2014

SUSAN VOLKMAN

v.

HANOVER INVESTMENTS, INC., ET AL.

Berger,
Arthur,
Reed,

JJ.

Opinion by Berger, J.

Filed: November 25, 2015

This appeal arises out of two orders of the Circuit Court for Montgomery County. The first denied Susan Volkman's ("Volkman's"), appellant's, motion for summary judgment against Hanover Investments, Inc.; Hanover's shareholders; and Hanover's wholly owned subsidiary, One Call Concepts, Inc. ("OCC") (collectively, "Hanover"), appellees. Secondly, Volkman appeals the trial court's order granting a declaratory judgment in favor of Hanover. Volkman contends the circuit court erred in denying her motion for summary judgment and rendering a declaratory judgment while another matter involving the same issues was pending in the court of another state. Additionally, Volkman avers that the circuit court erred in interpreting and applying the contractual agreement between Volkman and Hanover.

On appeal, Volkman presents three issues for our review.[1] We rephrase the first issue

---

[1] The issues, as presented by Volkman, are:

1.  Did the Circuit Court err in denying Appellant Volkman's motion for a summary judgment of dismissal where, at the time this Declaratory Judgment Action was filed, there was already pending in District Court in the State of Minnesota an action for specific performance in which the exact same issues identified in this Declaratory Judgment Action were to be litigated?

2.  Did the Circuit Court err in holding that the Appellees had good cause to terminate Appellant Volkman's employment where there was insufficient evidence upon which a reasonable finder of fact could conclude that Good Cause to terminate existed under either Volkman's Employment Agreement with Appellee One Call Concepts or Volkman's Shareholder's Agreement with Appellee Hanover Investments?

(continued...)

as follows:

> Whether the circuit court erred in rendering a declaratory judgment while an action involving the same parties and same issues was pending before a court in Minnesota.

For the reasons set forth below, we shall reverse the judgment of the Circuit Court for Montgomery County. As a result, we need not address the issues presented in Volkman's latter two questions due to our determination on the first issue.

## FACTUAL AND PROCEDURAL BACKGROUND

OCC is a Maryland corporation that exists to serve utility companies and process telephone calls from individuals who intend to undertake excavation projects. OCC maintains contracts for its services in a number of states across the county. At the time OCC was incorporated, it was owned by Thomas Hoff ("Hoff"). Volkman was hired by OCC in 1984. When Volkman was hired, she held the title of Director of Operations. In 1993, Volkman entered into an employment agreement whereby Volkman would serve as vice

---

[1] (...continued)

> 3. Was there substantial evidence to support the Circuit Court's finding that Appellee Hanover Investments acted in good faith in recognizing that One Call Concepts had good cause to terminate Appellant Volkman's employment where there was insufficient evidence upon which a reasonable finder of fact could conclude that Volkman's employment with Appellee One Call Concepts was terminated for Good Cause shown?

president of OCC in its corporate office in Minnesota. Under this agreement, Volkman could only be terminated for "Good Cause," or upon fifteen days' prior notice.

Volkman's responsibilities as vice president of OCC included, but were not limited to, facilitating acquisitions, making hiring decisions, and establishing policies and procedures. Additionally, Volkman was tasked with maintaining a contract in Minnesota with Gopher State One Call ("GSOC"). Volkman was a longtime employee of OCC who had worked her way up through the organization. She was highly compensated, earning in excess of $400,000 per year.

In or around 2007, Hoff expressed an intent to divest himself of his interest in OCC and retire. In recognition that much of OCC's value is derived from Hoff's association with the company, Hoff created Hanover Investments, Inc., as a holding company that existed for the sole purpose of owning shares of OCC. Under this arrangement, Hoff personally secured financing for Hanover to acquire OCC. OCC shares served as collateral for the debt. As OCC and Hanover paid down the debt, the liens on the shares were released, and the purchase price was disbursed to Hoff. As a result, Hoff was able to gradually back away from the company.

In pursuit of Hoff's objective to maintain the successive management of OCC, Hoff sold shares of Hanover to certain longtime OCC employees, including Volkman, at nominal prices. Hoff sold a 19% interest, the single largest interest, to Volkman. In consideration for her shares in Hanover, Volkman entered into a shareholders' agreement and paid $190

3

for her interest in Hanover.[2]  Under the terms of the shareholders' agreement, shareholders subscribed to a voting trust agreement whereby the shareholders could not vote their shares until Hoff's financial interest in Hanover was terminated.  Additionally, Hoff encouraged successive management by requiring Hanover to redeem the shares of any OCC employee who is terminated for good cause at a 90% discount.  The shareholders' agreement provides, "[i]f a Shareholder's employment with OCC is terminated for Good Cause and the Board of Directors of the Company agrees that OCC terminated the Shareholder for Good Cause, the Company shall redeem . . . [the] Shareholder's Common Stock."

Notably, the shareholders' agreement provides that "'[g]ood [c]ause' shall be construed to mean, but not be limited to, the following:"

> (a)    dishonesty of a Shareholder in a material matter;
>
> (b)    the use of narcotics or alcohol by Shareholder to an extent which materially interferes with Shareholder's performance of his duties as an employee as he normally performs such duties;
>
> (c)    repeated failure by Shareholder to devote proper time and attention to his duties as an employee of OCC or the Company;

---

[2] The record is silent as to the value of Hanover's shares when Volkman acquired them.  It is apparent, however, that the Hanover shares would significantly increase in value after the issuance of those shares.  It stands to reason that because of the manner in which Hanover was structured, there is a negative correlation between the value of Hanover's shares and the debt incurred by Hoff.  That is, as the debt secured by the OCC shares decreases, the OCC shares become unencumbered thereby raising the value of Hanover's shares.

4

(d)     material and repeated failure by Shareholder to carry out the directions, instructions, policies, rules, regulations or decisions of the Board of OCC or the Company;

(e)     conviction of a crime involving moral turpitude or reflection upon the reputation of the Company, but excluding minor traffic violations and similar offenses;

(f)     repeated and unexcused absenteeism after reasonable notice from the Board of OCC or the Company; or

(g)     the material breach by Shareholder of any of his obligations or agreements contained in the Agreement, his or her employment agreement with the Company, the Voting Trust Agreement of the Company, the Employee Restriction Agreement or any other agreement to which the Company or OCC and the Shareholder are parties.

On January 8, 2010, OCC terminated Volkman's employment. The parties disagree as to whether the termination was for good cause. Hanover avers that Volkman's termination was warranted because she failed to properly manage the operation of OCC's call center in Minnesota, which contributed to the loss of the GSOC account. Hanover further alleges that under Volkman's leadership, the Minnesota center failed to record approximately 8,400 phone calls resulting in a breach of the GSOC contract, and Volkman's subordinates were uncomfortable with her management techniques.

Volkman, for her part, argues that she was not responsible for the lost call records, and her difficult relationship with GSOC was the result of an unreasonable personal vendetta on the part of the management at GSOC. Further, Volkman argues that her relationship with GSOC could not have been a significant contributing factor to the termination of that

5

contract, because by the time GSOC terminated the contract, Volkman had already been removed from Minnesota operations. Finally, Volkman denied that her relationship with any of her subordinates was strained or unduly strenuous. Indeed, Volkman maintains that she was not terminated because of her job performance, but rather because her supervisors succumbed to pressure from an influential client to have her terminated.

On February 3, 2010, Hanover sent notice to Volkman that it was redeeming Volkman's stock. Thereafter, Hanover commenced an arbitration proceeding to determine the appropriate redemption price for Volkman's stock under the shareholders' agreement as a result of OCC terminating her employment. At that time, Volkman's stock was determined to be valued at $19,000. Hanover further maintained that pursuant to the shareholders' agreement it was entitled to redeem Volkman's stock at a 90% discount, or $1,900.

On April 17, 2012, Volkman filed an action (the "employment action") against OCC and Hoff in Montgomery County. The record reflects only that the parties stipulated to a dismissal with prejudice of this action on March 22, 2013. Hanover avers that Volkman was terminated for good cause and that this determination was pivotal in both the employment action and the declaratory judgment action which is the subject of this appeal. Aside from the stipulated dismissal, however, the record is silent as to the substance of the claims or any adjudications rendered in the employment action.

On January 16, 2013, while the employment action was pending, Volkman filed a breach of contract action in Minnesota alleging that Hanover violated the shareholders'

6

agreement by redeeming her stock at a 90% discount. In the breach of contract action Volkman sought specific performance of the shareholders' agreement. In response to the Minnesota breach of contract action, Hanover filed a motion to dismiss Volkman's case in Minnesota for lack of personal jurisdiction on March 15, 2013. On April 25, 2013, the Minnesota trial court denied Hanover's motion to dismiss. Hanover filed an interlocutory appeal challenging the denial of its motion to dismiss. Thereafter, on March 3, 2014, the Minnesota Court of Appeals affirmed the trial court's denial of Hanover's motion to dismiss the Minnesota action and remanded the case back to the trial court. *See Volkman v. Hanover Inv., Inc.*, 843 N.W.2d 789 (Minn. Ct. App. 2014).

On June 26, 2013, while Hanover's Minnesota appeal was pending, Hanover filed a declaratory judgment action in the Circuit Court for Montgomery County seeking to have the circuit court declare that Hanover fulfilled its obligations with regard to the redemption of Volkman's shares under the shareholders' agreement. Volkman and Hanover filed cross-motions for summary judgment. Neither party requested a hearing on their cross-motions for summary judgment. The parties both argued that they were entitled to judgment as a matter of law, but Volkman also argued that it was improper to render a declaratory judgment while the matter in Minnesota was still pending. Both motions for summary judgment were denied. Because no hearing was requested or held, the record contains no reasons why the cross-motions were denied. On June 16 and 17, 2014, the circuit court entertained a trial on the merits.

On August 18, 2014, after the Minnesota appeal had been decided, but before the case was heard by the Minnesota trial court on remand, the circuit court rendered judgment in favor of Hanover, finding that Volkman was properly terminated for cause pursuant to the shareholders' agreement.[3]  Thereafter, Volkman filed this timely appeal.  Additional facts will be discussed as necessitated by the issues presented.

## DISCUSSION

### I.  The Trial Court Erred In Issuing A Declaratory Judgment While An Action Involving The Same Parties And Issues Was Pending In Minnesota.

#### A.  Standard of Review

Maryland Code (1973, 2013 Repl. Vol.), § 3-409(a) of the Courts and Judicial Proceedings Article ("CJP") provides: "a court *may* grant a declaratory judgment . . . if it will serve to terminate the uncertainty or controversy giving rise to the proceeding . . . ." (emphasis added).  For the most part, because "[a] court 'may grant a declaratory judgment;' [the] declaratory judgment generally is a discretionary type of relief." *Converge Servs. Grp., LLC v. Curran*, 383 Md. 462, 477 (2004) (quoting CJP § 3-409(a)).  "Thus, we generally

_____

[3] On January 29, 2015, on remand in Minnesota, Hanover filed a motion for summary judgment in the Minnesota trial court.  The Minnesota trial court gave preclusive effect to the declaration made by the Circuit Court for Montgomery County and dismissed the Minnesota action with prejudice.  We observe, however, that the Minnesota court "specifically retains jurisdiction for the purposes of . . . reopening its judgment pending resolution of [this appeal]."  On appeal, because we determine only whether the trial judge erred in denying Volkman's summary judgment motion or rendering a declaration in Hanover's favor, we do not consider the effect of the ruling by the Minnesota trial court that occurred after the circuit court's decision in the instant case.

review a trial court's decision to grant or deny declaratory judgment under an abuse of discretion standard." *Sprenger v. Pub. Serv. Comm'n of Md.*, 400 Md. 1, 21 (2007); *Tanner v. McKeldin*, 202 Md. 569, 577 (1953) ("[I]t is clear that the exercise of declaratory jurisdiction is within the sound discretion of the court.").

Contrary to the permissive 'may' language used in CJP § 3-409(a),

> we have historically enforced the provisions of the Declaratory Judgment Act and insisted that courts declare the rights of parties when presented with an action properly susceptible to a declaratory judgment. Rarely, we have held, is it permissible to dismiss an action for declaratory judgment in lieu of declaring the rights of the party seeking the judgment.

*Post v. Bregman*, 349 Md. 142, 159-60 (1998). Additionally,

> This Court has emphasized, time after time, that dismissal "is rarely appropriate in a declaratory judgment action." *Popham v. State Farm*, 333 Md. 136, 140 n. 2, 634 A.2d 28, 30 n. 2 (1993), quoting *Broadwater v. State*, 303 Md. 461, 465, 494 A.2d 934, 936 (1985). *See*, *e.g.*, *Turnpike Farm v. Curran*, 316 Md. 47, 49, 557 A.2d 225, 226 (1989); *Boyds Civic Ass'n v. Montgomery County*, 309 Md. 683, 687 n. 2, 526 A.2d 598, 600 n. 2 (1987); *Jennings v. Government Employees Ins.*, 302 Md. 352, 355, 356, 488 A.2d 166, 167–168 (1985); *State v. Burning Tree Club*, 301 Md. 9, 17, 481 A.2d 785, 789 (1984); *Koontz v. Ass'n of Classified Emp.*, 297 Md. 521, 529, 467 A.2d 753, 758 (1983); *Carroll Co. Educ. Ass'n v. Bd. of Educ.*, 294 Md. 144, 155–156, 448 A.2d 345, 351 (1982); *East v. Gilchrist*, 293 Md. 453, 461 n. 3, 445 A.2d 343, 347 n. 3 (1982); *Mauzy v. Hornbeck*, 285 Md. 84, 90–92, 400 A.2d 1091, 1095 (1979), and cases there cited.

*Christ by Christ v. Md. Dept. of Natural Res.*, 335 Md. 427, 435 (1994).

It is, however, "within the discretion of the circuit court to 'refuse a declaratory

judgment when it does not serve a useful purpose or terminate controversy.'" *Polakoff v. Hampton*, 148 Md. App. 13, 27 (2002) (quoting *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 457 (1947)); *see* Edwin M. Borchard, *The Uniform Declaratory Judgments Act*, 18 Minn. L. Rev. 239, 267 (1934) [hereinafter Borchard, *The Uniform Declaratory Judgments Act*] ("the declaration is an instrument of practical relief and will not be issued where it does not serve a useful purpose."). The question presented in this case is whether the issuance of a declaratory judgment is inappropriate notwithstanding the applicant otherwise satisfies the conditions of CJP § 3-409(a).

### B. Propriety of A Declaratory Judgment While A Similar Action is Pending

One such instance where a declaratory judgment does not generally serve a useful purpose or terminate controversy is when there is another action pending in a different court involving the same parties and the same issues. Indeed, generally "courts will not entertain a declaratory judgment action if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated." *Waicker v. Colbert*, 347 Md. 108, 113 (1997). This rule rests on the principle that, "[w]here an action or proceeding is already pending in another forum involving the same issues, it is manifestly unwise and unnecessary to permit a new petition for a declaration to be initiated . . . ." Edwin Borchard, *Declaratory Judgments* 350 (2nd ed. 1941) [hereinafter Borchard, *Declaratory Judgments*].

10

This rule can be traced back to the equity courts of England, where principles of comity between the high Court of Chancery and the Court of Exchequer required "that where they have both an entirely concurrent jurisdiction of the same matter, that court is entitled to retain the suit, in which it has been first commenced." *Brown v. Wallace*, 4 G. & J. 479, 496-97 (1832); *see also Brooks v. Delaplaine*, 1 Md. Ch. 351 (1848) ("When two courts have concurrent jurisdiction over the same subject matter, the court, in which the suit is first commenced, is entitled to retain it. This rule is vital to the harmonious movement of the courts; and, any other would unavoidably, lead to perpetual collisions, and be productive of the most calamitous results."); *accord Withers v. Denmead*, 22 Md. 135, 145 (1864) (quoting *Brooks*, *supra*, 1 Md. Ch. 351).

This rule survives in the context of a declaratory judgment action out of recognition that the declaratory judgment is distinguishable from other judgments because "courts are empowered to adjudicate upon disputed legal rights whether or not further relief is or could be claimed." Borchard, *The Uniform Declaratory Judgments Act*, *supra*, at 239. In order for declaratory judgments to retain the procedural requisites of justiciability:

> two principal criteria guid[e] the policy of rendering declaratory judgments . . . (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

11

*Id.* at 265. Pursuant to these principles, Maryland courts have generally held that the practical purposes of the declaratory judgment are ill-served when a court makes a declaration while an action involving the same issues and the same parties is pending before another court.

As an initial matter, Hanover averred at oral argument that with respect to the Maryland and Minnesota actions, neither the parties nor the issues presented are truly the same. We are unpersuaded. First, in both actions Volkman argues against the actions made by Hanover Investments. Whether the Hanover shareholders or directors are named as parties to the action is an immaterial distinction where all the parties interact through the conduit of the Hanover corporation. Further, Hanover attempts to distinguish the actions by arguing that the declaratory judgment action is merely an attempt to legitimize its process for redeeming shares under their shareholders' agreement, whereas the Minnesota action seeks to adjudicate whether Volkman was properly terminated for cause. While we agree that the Maryland and Minnesota actions are not completely identical actions, our analysis merely inquires whether "identical issues . . . are involved" in the two actions. *Waicker*, *supra*, 347 Md. at 113. While the specific causes of action, legal theories, and objectives of litigation may differ between the declaratory judgment action and the Minnesota action, an adjudication with respect to the interpretation of the shareholders' agreement and the performance of that agreement are necessary issues common to both actions. Accordingly,

12

for the purpose of this analysis, the declaratory judgment action and the Minnesota action involve the same parties and the same issues.

Although, for our purposes, this declaratory judgment action and the Minnesota action involve the same parties and same issues, the question remains as to if it was appropriate for the circuit court to issue a declaratory judgment notwithstanding the pending Minnesota action. In *A. S. Abell Co. v. Sweeney*, 274 Md. 715 (1975), the Court of Appeals quoted Professor Borchard in analyzing when a declaratory judgment may be appropriate notwithstanding the pendency of another similar action. *Id*. at 721. The Court commented that "'[w]here an action or proceeding is already pending in another forum involving the same issues, (absent very unusual and compelling circumstances,) it is manifestly unwise and unnecessary to permit a new petition for a declaration to be initiated.'" *Id*. (quoting Borchard, *Declaratory Judgments*, *supra*, at 350). Notably, the parenthetical in the rule expressed in *A. S. Abell Co.* (i.e. "absent very unusual and compelling circumstances"), was absent from Professor Borchard's treatise. Critically, the Court of Appeals' opinion in *A.S. Abell Co.* represents the first instance when the "unusual and compelling" language entered our jurisprudence. *Compare A. S. Abell Co.*, *supra*, 274 Md. at 721, *with* Borchard, *Declaratory Judgments*, *supra*, at 350.

The Court of Appeals' analysis in *A. S. Abell Co.*, relied on its holding six years prior in *Grimm v. Cnty. Comm'rs of Washington Cnty.*, 252 Md. 626 (1969). *A. S. Abell Co.*, *supra*, 274 Md. at 719-21. *Grimm* involved a criminal defendant who was charged with

violating a county ordinance regarding the "fencing, burning and stacking of motor vehicles." *Grimm*, *supra*, 252 Md. at 628. After the county issued warrants for the violation of the ordinance, Grimm pursued a declaratory judgment action requesting that the court declare the ordinance unconstitutional. *Id.* In light of the pending criminal action, the trial judge refused to issue a declaratory judgment and dismissed the action. *Id.* at 630.

In affirming the trial court's finding that a declaratory judgment was inappropriate, the Court of Appeals in *Grimm* noted:

> there appears to be a division of authority between those jurisdictions which hold that it is an abuse of discretion to grant a declaratory judgment when there is a pending criminal prosecution involving the same parties and same issues, and those which hold that in a proper case, it is within the trial judge's discretion to grant such relief. We are not convinced, however, that the two lines of authority may not be reconciled on the basis of differences in local procedure or the types of interests threatened . . . .

*Grimm*, *supra*, 252 Md. at 639.

We, then, are tasked with addressing the "local procedures or the types of interests" that make a circumstance unusual and compelling so as to warrant issuing a declaratory judgment when an action involving similar issues is pending before another court. *Id.* When a litigant initiates a declaratory judgment under such circumstance, the trial court generally does not abuse its discretion by refusing to issue a declaration. *Sprenger v. Pub. Serv. Comm's of Md.*, 400 Md. 1, 33 (2007) (holding that trial judge is legally correct in dismissing declaratory action when two actions are substantially the same, issues were identical, and the

14

identical action was still pending); *accord Popham*, *supra*, 333 Md. at 140 n.2; *Haynie v. Gold Bond Bldg. Prods.*, 306 Md. 644, 653-54 (1986); *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 405-06 (1975); *Grimm*, *supra*, 252 Md. at 640; *Polakoff v. Hampton*, 148 Md. App. 13, 39 (2002).

The question then arises whether the same standard applies when a trial judge fails to dismiss a declaratory judgment and elects to issue a declaratory judgment when the parties and issues are substantially the same as an action that is pending in a court of concurrent jurisdiction. We are cognizant that the Court of Appeals has expressly held that the failure to dismiss a declaratory action is, under many circumstances, an abuse of discretion when a similar action is pending. *See*, *e.g.*, *Waicker*, *supra*, 347 Md. 108; *Tpk. Farm Ltd. P'ship*, *supra*, 316 Md. 47 (reversing, in *per curiam* decision, a declaration made by a trial court because similar action involving same issues was pending in the same court).

The Court of Appeals has repeatedly "made clear that, as a general rule, courts will not entertain a declaratory judgment action 'if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated.'" *Post*, *supra*, 349 Md. at 160 (quoting *Waicker*, *supra*, 347 Md. at 113). Similarly, in *Brohawn*, *supra*, the Court of Appeals held that "where, as here, the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment." 276 Md. at 406; *see also Aetna Cas. & Sur.*

*Co. v. Kuhl*, 296 Md. 446, 450 n.1 (1983) (observing that "a declaratory judgment action brought by an insurer is inappropriate where the same issue is pending in another proceeding"). Moreover, when the circuit court exercises its discretion to affirmatively render, as distinguished from abstaining from rendering, a declaration while another similar action involving the same parties and same issues is pending, we are to reverse the judgment absent "unusual and compelling circumstances." *Waicker*, *supra*, 347 Md. at 113.

In *Waicker*, the Court of Appeals adopted a narrow construction of the term "unususal and compelling" when addressing the appropriateness of entertaining a declaratory judgment action notwithstanding a pending action involving the same issues in another forum. *Waicker*, *supra*, 347 Md. at 116. There, the defendant in a civil tort case, a court appointed property manager, filed a declaratory judgment action in the same court to resolve an issue that would be outcome determinative of the pending tort lawsuit. *Id.* at 110. The circuit court issued a declaration against the property manager, and the property manager appealed the judgment. *Id.* The Court of Appeals raised the issue, *sua sponte*, of whether issuing a declaration was appropriate in light of the pending tort action. *Id.* at 112-13. The Court articulated that a strong public policy in favor of resolving litigation in a single action, as well as a policy against "interlocutory orders and against piecemeal appeals" weighed against rendering a declaration under those circumstances. *Id.* at 115-16 (quoting *Haynie*, *supra*, 306 Md. at 653-54). The Court of Appeals, therefore, held that there were no unusual or compelling circumstances so as to permit the issuance of a declaratory judgment when an

16

action was pending involving the same issue. *Id.* at 116. Accordingly, the Court reversed the declaratory judgment issued by the trial court.[4] *Id.*

Similar to *Waicker*, in *State v. 91st St. Joint Venture*, 330 Md. 620 (1993), the Court of Appeals, in a *per curiam* order, vacated an interlocutory injunction ordered by the Circuit Court for Baltimore City, while the same parties were litigating the same issues in the Circuit Court for Worcester County. *91st St. Joint Venture*, 330 Md. at 623. In that case, the State Department of Natural Resources ("DNR") filed an action to enjoin the defendants from constructing a gazebo in a protected area in Ocean City, Maryland. *Id.* at 623-24. Rather than respond to the action, the defendants filed a complaint in the Circuit Court for Baltimore City seeking declaratory and injunctive relief. *Id.* at 624. The Circuit Court for Baltimore City, then, issued an injunction prohibiting the DNR from enforcing its regulations and prohibiting the DNR from proceeding with the action in Worcester County. *Id.* at 625.

On appeal, the Court of Appeals held that "the Circuit Court for Baltimore City abused its discretion when it enjoined the [DNR] from proceeding with the Worcester County action previously filed." *Id.* at 632. The Court's decision rested on the principle that when

---

[4] Notably, Judge Chasanow wrote a dissenting opinion in *Waicker*, arguing that the majority failed to afford sufficient deference to the trial judge's determination to exercise jurisdiction. 347 Md. at 119-20. Further, the dissent recognized that whether principles of judicial economy create unusual and compelling circumstances often cuts both ways. *Id.* at 122-23. For example, in *Waicker*, Judge Chasanow in his dissent argued that the declaration at issue would serve to resolve multiple pending and future actions. *Id.* Accordingly, the dissent posited that principles of judicial economy actually supported finding unusual and compelling circumstances in that case. *Id.* at 124.

17

one court exercises jurisdiction over an action that is already subject to the jurisdiction of another court, "'the danger of collision is so imminent, that public policy as well as judicial comity requires that the court of co-ordinate jurisdiction, first in possession of any portion of the subject-matter, should not be disturbed by any other court.'" *Id.* at 629 (quoting *Withers*, *supra*, 22 Md. at 146). We recognize that *91st St. Joint Venture* deals with the grant of an injunction rather than a declaration. Nevertheless, in our view, the Court's reliance on principles of comity between courts of concurrent jurisdiction is instructive as we aim to interpret and apply the term "unusual and compelling circumstances" to this case.

The meaning we ascribe to the term "unusual and compelling" is further informed by the Court of Appeals' decision in *Brohawn*, *supra*, 276 Md. 396. In *Brohawn*, the Court of Appeals determined that a trial court's discretion as to whether to issue a declaration should be guided by:

> several factors including the effect of granting a judgment on the rights of all parties to the action. If the granting of the judgment would unduly inconvenience or burden the parties, or allow one party to wrest control of the litigation from another and cause a confusing alteration of the burden of proof, the court should refuse to grant the relief sought. *Employers' Fire Insurance Company v. Beals*, *supra*, 240 A. 2d at 401. Under such circumstances, granting a declaratory judgment would constitute an abuse of discretion.

*Brohawn*, *supra*, 276 Md. at 406.

In *Brohawn*, a physical altercation arose between Brohawn and another individual that resulted in Brohawn pleading guilty to criminal assault charges. *Id.* at 399. Subsequently,

18

the other party to the altercation filed an action against Brohawn seeking damages for intentional torts and negligence. *Id.* at 399-400. Transamerica, Brohawn's insurer, refused to defend Brohawn on the grounds that her coverage contained a policy exclusion whereby Transamerica was not responsible for intentional conduct. *Id.* at 400. Thereafter, Transamerica initiated a declaratory judgment action, in the same court, seeking to have the court declare that Brohawn's conduct was intentional, and, therefore, fell within the policy exclusion. *Id.* at 401. The circuit court dismissed the declaratory judgment action because "the question of coverage would be 'determined by the jury's verdict (in the tort suits). . . .'" *Id.* at 401-02.

Brohawn then appealed the circuit court's decision where we, sitting *en banc* in a 7-2 decision, reversed the dismissal of the declaratory judgment action. *Transamerica Ins. Co. v. Brohawn*, 23 Md. App. 186, 201 (1974). We reasoned that because the very harm Transamerica sought to avoid was having to defend Brohawn in the pending tort litigation, a declaration stating the rights of the parties was appropriate, notwithstanding the pending tort litigation. *Id.* Accordingly, we reversed the circuit court's dismissal of the declaratory judgment so that the issue of Transamerica's liability may be resolved before it underwent the effort and expense of defending Brohawn. *Id.* The case did not end there, however, as the Court of Appeals granted Brohawn's writ of certiorari. *Brohawn*, *supra*, 276 Md. at 402.

The Court of Appeals acknowledged that if the issue between Brohawn and Transamerica were not the ultimate issue to be determined in the underlying action, then a

19

declaratory judgment might have been appropriate. *Id*. at 406. When, however, "the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment." *Id.* (citing *Watson v. Dorsey*, 265 Md. 509, 512 n.1 (1972)). Further, the Court determined that it would be inherently unfair to permit Transamerica to monopolize not only its litigation with Brohawn, but also the litigation between Brohawn and the plaintiff in the underlying tort litigation because of the preclusive effect the declaration may have on the pending litigation. *Id.* at 407. Accordingly, the Court of Appeals reversed our decision and held that the circuit court did not abuse its discretion by declining to render a declaratory judgment. *Id.* We recognize that *Brohawn* is distinguishable from this case because there the Court sought to prevent a declaratory judgment action from being used to prejudice a plaintiff in the underlying tort action who was not a party to the declaratory judgment action. *Id.* at 407-08. Nevertheless, we find *Brohawn* persuasive to the extent that it articulates one of many considerations that weigh on the question as to whether a declaratory judgment action is proper.

We further find persuasive decisions arising from the courts of other jurisdictions that have refused to endorse the usurping of the jurisdiction of a court with concurrent jurisdiction through the failure to permit the matter to be resolved in its original forum. *See*, *e.g.*, *First Midwest Corp. v. Corp. Fin. Assoc.*, 663 N. W. 2d 888, 892-93 (Iowa 2003) (holding that it was an abuse of discretion to deny stay while matter was pending in neighboring state) (citing *Waicker*, *supra*, 347 Md. at 115); *Woodmen of the World Life Ins.*

20

*Soc'y*, 549 N.W.2d 172, 176 (Neb. 1996) (holding that "entertaining [a] declaratory judgment action was an abuse of discretion" when the same issue was pending in an action in West Virginia); *Simmons v. Superior Court in and for L.A. Cnty.*, 214 P.2d 844, 848-49 (1950) ("The fruits of the recognition of the rule of comity have been so beneficent, when applied to courts of concurrent jurisdiction created by different sovereignties, as to justify the conclusion that it is not only a rule of comity, but one of necessity." (internal quotations omitted)). These persuasive authorities buttress our reliance on the principle that it is inherently unwise to render a declaratory judgment while an action is pending involving the same issues in a court of concurrent jurisdiction.

Some jurisdictions, however, have been more willing to disregard this rule, viewing the general prohibition on issuing declarations while a similar action is pending not as a rule of necessity only to be violated in the most exceptional circumstances, but as "a willingness to grant a privilege, not as a matter of right, but out of deference and good will." *Quiring v. GEICO Gen. Ins. Co.*, 953 N.E.2d 119, 128 (Ind. Ct. App. 2011); *see also Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 449 (Minn. Ct. App. 2001) ("Comity is not a formal rule but rather an informal policy of deference."); *Fitch v. Whaples*, 220 A.2d 170, 173 (Me. 1966) ("There is no compulsory duty resting on a trial court to stay the proceedings pending before it on account of the pendency in another jurisdiction of an action previously instituted between the same parties for the same cause. The doctrine of comity does not establish an imperative rule of law. It has the power to persuade but not command.").

21

The American Law Institute's position is that "[a] state may entertain an action even though an action on the same claim is pending in another state." Restatement (Second) of Conflict of Laws § 87 (1971) (noting, however, that when a "plaintiff can secure all the relief to which he is entitled . . . the courts will frequently, in their discretion, grant a stay of the second action pending the outcome of the first"). The position articulated in the Restatement, however, is in tension with our rule. The authorities that have been willing to affirm a declaratory judgment rendered while an action involving the same issues is pending rely heavily on the principle that the general prohibition "is neither jurisdictional nor absolute," and that the trial court is vested with significant discretion in such matters. *Haynie*, *supra*, 306 Md. at 652. Our binding authorities, however, illustrate that a trial court abuses its discretion, absent unusual and compelling circumstances, when it exercises declaratory jurisdiction over a matter involving the same issues as another matter pending before a court of concurrent jurisdiction.

We are further persuaded by the dearth of support for the proposition that the circuit court has discretion to render a declaration under circumstances similar to the case *sub judice*. Indeed, our research -- thorough we trust -- has not unearthed a single case in which our appellate courts have upheld the grant of a declaratory judgment notwithstanding a pending action involving the same parties and the same issues in another state. Although our courts have crafted language enabling the trial courts to declare the rights of the parties in "unusual and compelling circumstances," this is an extremely narrow exception that has

never been employed since it was articulated by the Court of Appeals in *A. S. Abell Co.*, *supra*, in 1975.  274 Md. at 721.

The rule reflected in the Restatement as well as persuasive authority suggesting that we should be more deferential to a trial court's willingness to usurp the jurisdiction of out-of-state courts is inconsistent with the significant limitations on discretion imposed by the Court of Appeals.  Notably, our cases have viewed a trial court's willingness to undermine the jurisdiction of a court with concurrent jurisdiction by means of a declaratory judgment action with great skepticism out of recognition that a declaratory judgment action in such circumstance fails to serve the dual purposes of (1) "serv[ing] a useful purpose in clarifying and settling the legal relations in issue, and (2) . . . terminat[ing] and afford[ing] relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Borchard, *The Uniform Declaratory Judgments Act*, *supra*, at 239.

The Court of Appeals' specific use of the words "unusual and compelling" as applied in the Court of Appeals' decision in *A. S. Abell Co.*, *supra*, 274 Md. at 721; *Waicker*, *91st St. Joint Venture*, *Tpk. Farm Ltd. P'ship* and *Brohawn* (as well as persuasive authorities from other jurisdictions imposing similar rules), illustrate just how narrowly those terms are to be construed.  Notably, the Court of Appeals has expressed little hesitation when reversing the discretionary decisions of trial courts that make declarations while another action involving the same issues are pending.  *See*, *e.g.*, *Waicker*, *supra*, 347 Md. 108; *91st St. Joint Venture*, *supra*, 330 Md. 620; *Tpk. Farm Ltd. P'ship*, *supra*, 316 Md. 47.

While our authorities in Maryland do not articulate the precise definition of the words "unusual and compelling," our cases nevertheless illustrate the attendant features that will accompany a circumstance that is sufficiently unusual and compelling. For instance, we know that a circumstance may be unusual and compelling when judicial economy is not offended by the exercise of jurisdiction, *Waicker*, *supra*, 347 Md. at 115-16, when principles of comity do not require deference to be afforded to the court first exercising jurisdiction, *91st St. Joint Venture*, *supra*, 330 Md. at 628-29, and when there is no concern with one party inappropriately controlling the litigation. *Brohawn*, *supra*, 276 Md. at 406. Accordingly, we are guided by these principles as we determine whether the circumstances here are sufficiently unusual and compelling.

### C.    *Hanover's Action is Not Unusual and Compelling*

In the case *sub judice*, we are called upon to adopt one of two polarized positions by holding that this is either one of the infrequent instances when a trial court has abused the discretion vested in it, or, alternatively, whether this case qualifies as the first "unusual and compelling circumstance" since the Court of Appeals adopted this interpretation of the rule in 1975. *A. S. Abell Co.*, *supra*, 274 Md. at 721. After weighing the considerations that are woven through our authorities on this subject, namely, judicial economy, comity, and control of the litigation, we hold that the trial court erred by issuing declaratory relief in this case.

First, we recognize from the majority and dissenting opinions in *Waicker* that the argument for judicial economy often cuts both ways. *See generally Waicker*, *supra*, 347 Md.

24

108. In this case, however, the interests of judicial economy are best served by permitting this entire action to be resolved in its original forum. Were it not for our prohibition on entertaining declaratory judgment actions while actions involving similar issues are pending, "'almost any pending action could be interrupted and held at bay until the determination, in one or more subsequently instituted declaratory judgment actions, of issues culled out of the pending action.'" *Id*. at 115 (quoting *Redmond v. Matthies*, 180 A.2d 639, 642 (Conn. 1962)). The most efficient means to resolve this litigation would be for the entire action to be resolved in Minnesota, where the breach of contract action would not only articulate the rights of the parties, but also afford relief, if any, was due.

By pursuing a declaratory judgment with issues identical to those in the Minnesota action, Hanover has unduly burdened our courts, as well as the courts of Minnesota. First, the Circuit Court for Montgomery County was called upon to resolve an issue that was already in the process of being litigated in another state. To burden the circuit court's docket with an action identical to one already being litigated elsewhere is, generally, an imprudent use of judicial resources and runs contrary to our policy against forum shopping and piecemeal litigation.[5] Moreover, this action imprudently wastes the judicial resources of

---

[5] Hanover, for its part, argues that the dismissal of the employment action in Maryland followed by an action in Minnesota amounts forum shopping on Volkman's part, and, in any event, the dismissal of the earlier action with prejudice precludes the Minnesota action and requires a declaratory judgment in its favor. We are not persuaded. First, the employment action addressed whether Volkman was properly terminated from her employment with OCC, whereas this declaratory judgment action addresses what rights, if any, she has under the

(continued...)

Minnesota's courts by virtue of the fact that Hanover participated in the Minnesota litigation, appealed the judgment in that case to the Minnesota Court of Appeals, and then Hanover, in effect, mooted that case by seeking a declaratory judgment in Maryland. We, therefore, hold that it is otherwise inefficient for Hanover to pursue two actions involving the same parties and the same issues under these circumstances. As such, it is not an appropriate use of judicial resources to permit Hanover to pursue a declaratory judgment action while the previously filed action in Minnesota was pending. Accordingly, this improper use of judicial resources weighs against us holding that an unusual and compelling circumstance exists here.

Secondly, principles of comity suggest that this action is more properly resolved in Minnesota. Initially, we are cognizant that, unlike the full faith and credit clause of the U.S. Constitution (which requires us to give full faith and credit to the judgments of other jurisdictions), comity is an amorphous principle that merely permits us to give deference to the proceedings of other jurisdictions "'not as a matter of obligation but out of deference and

[5] (...continued)
shareholders' agreement with Hanover. While Volkman's recovery under the shareholders' agreement is largely contingent on whether she was properly terminated by OCC, we note that the shareholders agreement further requires the Hanover's Board of Directors to concur that Volkman was terminated for good cause before Hanover may redeem Volkman's shares at a 90% discount. Secondly, aside from the stipulated dismissal, the record is devoid of any information regarding the first lawsuit involving the employment action. Critically, the record is silent as to what claims were made, what facts were presented, or what judgments were rendered in the employment litigation. Accordingly, we are unwilling to permit the employment action to influence our decision. The record merely reflects that there was an action between Hanover and Volkman and the parties stipulated to a dismissal of that action with prejudice.

respect.'" *Port v. Cowan*, 426 Md. 435, 444 (2012) (quoting *Wash. Suburban Sanitary Comm'n v. CAE-Link Corp.*, 330 Md. 115, 140 (1993)). To be sure, there are many factors that bear on whether comity militates in favor of affording deference to the jurisdiction of Minnesota, just as comity is but one factor in determining whether this situation is sufficiently unusual and compelling.

For instance, we observe that Minnesota has a much stronger interest in adjudicating this dispute, and that Minnesota is a more convenient forum. Our holding is guided by Volkman's status as a Minnesota resident; that the conduct that gave rise to the parties' claims and defenses, *i.e.*, the interaction between Volkman and the Minnesota client, occurred in Minnesota; and that Volkman initially initiated litigation involving this issue in Minnesota.[6] Additionally, we recognize the Minnesota trial and appellate courts had already expended significant time, efforts, and resources in this matter prior to the Maryland trial court's declaratory judgment.

We nevertheless recognize that Maryland is not indifferent to the resolution of this dispute which involves an entity incorporated under the laws of Maryland and with its principal place of business in Maryland. Furthermore, the shareholders' agreement provides that the agreement is to be interpreted under the laws of Maryland. Under the totality of these circumstances, however, Maryland's interest in this litigation is inferior to that of a

---

[6] We recognize that Volkman apparently initiated an action in Maryland prior to the Minnesota action. For the reasons stated *supra*, however, we are unwilling to allow our analysis to be guided by the status of litigation that is not reflected in the record.

27

court of concurrent jurisdiction that has exercised primary jurisdiction over a dispute that involves matters primarily within its territorial jurisdiction. For its part, Hanover argues that it would be unduly burdensome to require its shareholders to travel to litigate in Minnesota, but we fail to ascertain why Hanover's shareholders would be necessary parties to the action in Minnesota. Accordingly, principles of comity weigh against holding that this is a sufficiently unusual and compelling circumstance.

Finally, *Brohawn* instructs us that we should resist usurping the jurisdiction of another court when a subsequent action will work to "allow one party to wrest control of the litigation from another." *Brohawn*, *supra*, 276 Md. at 406. Moreover, we have a strong policy in favor of respecting a plaintiff's choice of forum and we will only disregard that interest when there is some more important countervailing interest. *See Jones v. Prince George's Cnty*, 378 Md. 98, 120 (2003) ("plaintiff['s] choice of forum is not to be lightly disturbed"); *Leung v. Nunes*, 354 Md. 217, 225 (1999) ("Unless the balance of convenience is strongly in favor of the defendant, or such balance weighs heavily in favor of the defendant, the plaintiff's choice of forum should not, or should rarely, be disturbed." (internal quotations omitted)). Indeed, the legal maxim *invitus agere nemo cogatur* (no one is forced to act unwillingly) can be traced back to Roman and Germanic law supporting the proposition that "the holder of a right of action is free to assert it when and where he chooses . . . ." Robert Wyness Millar, *Civil Procedure of the Trial Court in Historical Perspective* 137-38 (1952).

We hold that, under these circumstances, Hanover's declaratory judgment action undermines our policy in favor of respecting a plaintiff's choice of forum. In this case, the litigation between Volkman and Hanover was filed and was in the midst of an interlocutory appeal to the Minnesota Court of Appeals before Hanover initiated the Maryland declaratory judgment action. Moreover, the Minnesota Court of Appeals had affirmed that jurisdiction was proper in Minnesota prior to the circuit court's declaratory judgment order. Critically, the very question that Hanover sought to be adjudicated in the declaratory judgment action was the dispositive question in the pending Minnesota litigation.

We are not naive about the fact that both litigants have made numerous tactical decisions to further their respective causes throughout this litigation. For reasons stated *supra*, we are unwilling to allow our analysis to be guided by the prior Maryland employment action in the absence of a record indicating the questions or proofs presented in that litigation. Further, we are unpersuaded that arbitration proceedings between the parties in Maryland involving issues wholly distinguishable from the issues *sub judice* warrant disregarding Volkman's choice of forum. Under the totality of these circumstances, we see no countervailing interest sufficient to permit Hanover to disturb Volkman's choice of forum by means of pursuing this declaratory judgment action. We, therefore, hold that Hanover's attempt to deprive Volkman of the right to select a forum of her choosing by means of a declaratory judgment action weighs against concluding this constitutes an unusual and compelling circumstance.

**II.    Conclusion**

For the reasons stated above, we hold that neither principles of judicial economy, comity, nor procedural policy weigh in favor of this action constituting an unusual and compelling circumstance so as to permit the issuance of a declaratory judgment when an action was pending in another court involving the same issue.  Accordingly, we are unpersuaded that the circumstances under which this declaratory judgment was rendered are sufficiently unusual and compelling to permit usurping the jurisdiction of the Minnesota trial court.  We, therefore, hold that the trial court erred in rendering a declaratory judgment while an action involving the same issues was pending in Minnesota. Accordingly, we reverse the judgment and remand the case to the circuit court with instructions to vacate the declaratory judgment rendered on August 18, 2014.  The remaining two questions presented by Volkman are rendered moot in light of our holding.

> **JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO VACATE THE DECLARATORY JUDGMENT ENTERED ON AUGUST 18, 2014.  COSTS TO BE PAID BY APPELLEE.**