*Hanover Investments, Inc. et al. v. Susan J. Volkman*
No. 9, September Term 2016


**Declaratory Judgments Act – Effect of Pending Litigation.** Under the Maryland Uniform Declaratory Judgments Act, a court may entertain a declaratory judgment action even if there are other causes of action that could be asserted by one of the parties to resolve the same issues presented in the declaratory judgment action. However, if there is already pending another action between the same parties concerning substantially the same issues as the declaratory judgment action, the court should dismiss the declaratory judgment action or stay it until the pending action is resolved, unless there are "unusual and compelling" reasons for doing otherwise. Maryland Code, Courts & Judicial Proceedings Article, §3-401 *et seq*.

Circuit Court for Montgomery County
Case No. 335496V
Argued: September 7, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 9

September Term, 2016

_____

HANOVER INVESTMENTS, INC. et al.

V.

SUSAN J. VOLKMAN

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Getty,
Harrell, Jr., Glenn T., (Senior
Judge, Specially Assigned)

JJ.

_____

Opinion by McDonald, J.
Harrell, J., dissents.

_____

Filed:    July 31, 2017

The declaratory judgment action has been lauded as a "simple judicial device for speedy adjudication of legal differences" that serves "the important social function of deciding controversies at their inception."[1] The fact that there may be other causes of action available to resolve the same issues in a particular case does not preclude a party from pursuing declaratory relief. However, this Court has consistently held that a trial court should not entertain a declaratory judgment action when there is already pending another action between the same parties concerning substantially the same issues unless there are "unusual and compelling circumstances."

Respondent Susan J. Volkman was a managerial employee of Petitioner One Call Concepts, Inc. ("OCC"), and, as a result of that employment, a shareholder of OCC's parent, Petitioner Hanover Investments, Inc. ("Hanover"). Both OCC and Hanover are controlled by Petitioner R. Thomas Hoff, the founder of the two companies. When Mr. Hoff decided that it was necessary to terminate Ms. Volkman's employment with OCC and to redeem her shares of Hanover, litigation ensued on several fronts. This case is a declaratory judgment action brought by Hanover, Mr. Hoff, and others against Ms. Volkman in the Circuit Court for Montgomery County to vindicate the procedures it followed to redeem her stock. However, at the time it was filed, there was already pending, in a Minnesota state court, a breach of contract action by Ms. Volkman against Hanover concerning the same issue.

---

[1] E. Borchard, Declaratory Judgments (2d ed. 1941) xiii, 316.

The Circuit Court declined to dismiss or stay this action in deference to the pending Minnesota action, proceeded to trial, and issued a declaratory judgment in favor of Hanover. Ms. Volkman appealed. In a thorough and scholarly opinion, the Court of Special Appeals concluded that there were not "unusual and compelling" circumstances that justified the issuance of a declaratory judgment by the Circuit Court to resolve the same question at issue in the pending litigation in Minnesota. We agree.

# I

## Background

### A.    *Facts*

We recount some of the underlying facts to provide context for the legal issue before us. While the Circuit Court did not make detailed factfindings in its oral opinion and written order in this case, the basic facts are largely undisputed.[2]

*OCC*

OCC, a Maryland corporation known locally by its trade name "Miss Utility," was founded by Mr. Hoff, a Maryland resident. OCC operates call centers that function as one-call clearinghouses for excavators for information on the location of underground utility lines. It has operations in many states, including Maryland and Minnesota.

---

[2] The Circuit Court drew certain conclusions as to whether parties acted in good faith and the legal ramifications of those conclusions – issues that were disputed. We do not express an opinion about those conclusions, as the merits of those conclusions are not before us. Rather, the question before us is whether the court should have conducted the trial and made any findings at all.

*Employment of Susan Volkman*

In 1984, OCC hired Ms. Volkman, who had previously worked for a similar one-call notification center in Wisconsin. Ms. Volkman worked her way up through the ranks of the company, relocated to Minnesota, and by early 2010 was serving as the manager of several locations, including OCC's Minnesota one-call center. She reported directly to Mr. Hoff.

Ms. Volkman eventually entered into an employment agreement with OCC dated January 1, 1993 ("Employment Agreement"). Under that agreement, OCC retained the option to terminate Ms. Volkman's employment with or without "good cause." In particular, she could be terminated immediately for "good cause"; otherwise, OCC was required to provide Ms. Volkman 15 days' notice, during which time she would continue to be paid. The Employment Agreement listed several examples of what might constitute good cause (including use of illegal drugs, certain felony convictions, and neglect of duties), but stated that these examples were not exhaustive. The Employment Agreement provided that it was to be construed in accordance with the law of Maryland and included a forum selection clause requiring any action to enforce the agreement to be filed "in a courthouse located in Montgomery County, Maryland."

*Creation of Hanover, Distribution of Shares, and the Shareholders' Agreement*

In 2007, as Mr. Hoff contemplated retirement, he decided to sell OCC to several of its longtime employees, including Ms. Volkman. For that purpose, he created Hanover, a Maryland corporation, whose sole purpose is to hold stock in OCC. Mr. Hoff sold OCC to Hanover, and allowed selected employees, including Ms. Volkman, to purchase shares in

Hanover for a nominal price. The shares purchased by Ms. Volkman amounted to 19% of Hanover's stock.[3] Under a financing arrangement, Mr. Hoff would receive the purchase price for OCC – $26 million – over time, out of OCC's income. In the meantime, the new shareholders of Hanover agreed to assign the voting rights of their stock to a voting trust, for which Mr. Hoff's counsel was trustee. At all relevant times, Mr. Hoff has remained a board member and CEO of Hanover.

As part of the arrangement, the new Hanover shareholders were also required to enter into a Shareholders' Agreement. Under that agreement, Hanover had the right to repurchase an employee/shareholder's shares if and when that individual stopped working for Hanover's subsidiary, OCC. The price to be paid for the shares in that repurchase transaction would depend on the circumstances of the employee/shareholder's departure from OCC. The most pertinent provisions, for purposes of this case, deal with a share repurchase when an employee/shareholder has been involuntarily terminated from OCC. If OCC were to terminate the employment of an employee/shareholder *without good cause* – and Hanover's board of directors agreed that the termination was without good cause – Hanover was obligated to redeem the shares for their full "Fair Market Value."[4] If OCC were to terminate the employment of an employee/shareholder *with good cause* – and Hanover's board of directors agreed that the termination was with good cause – Hanover

---

[3] Hanover charged the employees $1 per share. Ms. Volkman purchased 190 shares for $190.

[4] Under the Shareholders' Agreement, the Fair Market Value would be set by Hanover's board of directors once each year.

4

would pay only 10% of the "Fair Market Value" of the shareholder's shares. The Shareholders' Agreement defined "good cause" in terms similar to Ms. Volkman's Employment Agreement.

Like the Employment Agreement, the Shareholders' Agreement provided that it was to be construed according to Maryland law. However, unlike the Employment Agreement, the Shareholders' Agreement did not include a forum selection clause. The Shareholders' Agreement provided for arbitration of disputes concerning "the value of, or payment for, Common Stock," but not for any other dispute.

*Ms. Volkman's Dismissal from OCC and Hanover's Redemption of Her Stock*

The genesis of this lawsuit (and, as will be discussed below, several other lawsuits as well) was Ms. Volkman's termination by OCC.

In early January 2010, Mr. Hoff called Ms. Volkman and told her she was not to return to work. According to Ms. Volkman, Mr. Hoff gave her no reason for her termination. In February 2010, an attorney for Mr. Hoff, OCC, and Hanover sent her counsel a letter formally notifying Ms. Volkman that OCC had terminated her for good cause, which would result in the redemption of her Hanover shares. OCC eventually gave several reasons for dismissing Ms. Volkman that it contended were good cause under the Employment Agreement. It blamed her for the very difficult relationship it had with a Minnesota client, Gopher State One Call, a relationship that had been under Ms. Volkman's purview as manager of Minnesota operations. It noted complaints about her leadership received from employees under her supervision. And it noted that the Minnesota call center had lost call recordings that OCC was contractually and legally required to retain. For her

5

part, Ms. Volkman contends that she was terminated not due to her own job performance, but as a result of a vendetta against her by the general counsel of one of OCC's Minnesota clients.

For purposes of this appeal, we need not resolve whether or not OCC had "good cause" to terminate Ms. Volkman. However, it is significant for understanding some of the later court proceedings that OCC continued to pay Ms. Volkman's salary for 15 days after she received written notice of her termination, although this was not required by the Employment Agreement if she had in fact been terminated for good cause.

As set forth in the Shareholders' Agreement, Hanover redeemed Ms. Volkman's stock and, on February 3, 2010, sent her a "purchase note" for $1,900 with a maturity date seven years later on January 31, 2017. The cover letter explained that Hanover's board of directors had set its Fair Market Value at $100,000, that Ms. Volkman's 19% interest was therefore valued at $19,000, and that the payment was discounted 90% to $1,900 under the provision of the Shareholders' Agreement relating to terminations for good cause.

As explained below, the redemption of Ms. Volkman's shares of Hanover, as well as the underlying termination of her employment by OCC, set off a series of legal encounters between Hanover, its other shareholders, and OCC, on the one hand, and Ms. Volkman on the other.

## B.    *Legal Proceedings*

*The Employment Agreement Action*

More than two years after her termination, on April 17, 2012, Ms. Volkman filed a lawsuit against OCC and Mr. Hoff based on the Employment Agreement (the

"Employment Agreement Action"). As required by the forum selection clause in that agreement, she filed her complaint in the Circuit Court for Montgomery County. As later amended, the complaint included a breach of contract claim against OCC based on the Employment Agreement, along with various tort claims against OCC and Mr. Hoff concerning her termination, some of which referenced the interaction of the Employment Agreement with the Shareholders' Agreement. The complaint alleged that OCC had violated the Employment Agreement by purporting to terminate her for good cause (1) when there was no factual basis to support a good cause termination and (2) when OCC knew of the "substantial ramifications" such a termination would have on her ownership of Hanover stock.[5]

On August 31, 2012, OCC and Mr. Hoff moved to dismiss the amended complaint. In that motion they argued, among other things, that Ms. Volkman would not be able to prove any damages under the Employment Agreement because OCC had paid Ms. Volkman "everything to which she was entitled under the Employment Agreement,"[6] and that any "damages" stemming from the alleged breach of the Employment Agreement

---

[5] Although the pleadings from that case are not part of the record of this case, we take judicial notice of the docket and certain filings in that case, which have been discussed at some length by both sides in this case. *Volkman v. One Call Concepts, Inc., et al.*, Case No. V362636 (Circuit Court for Montgomery County*). See Cochran v. Griffith Energy Services, Inc.*, 426 Md. 134, 145 n.4 (2012) (although an appellate court does not normally "travel" outside the record, judicial notice may be taken of filings in related cases in furtherance of a just result).

[6] OCC and Mr. Hoff did not elaborate on this assertion, but it appears that they were referring to the 15 days' pay that Ms. Volkman received following her termination in January 2010.

would relate to the redemption of her Hanover stock under the provisions of the Shareholders' Agreement – an agreement to which OCC was not a party.

Two months later, the Circuit Court held a hearing on this motion on November 2, 2012, and – on the same day – issued an order dismissing the tort claims. With respect to the breach of contract claim against OCC, the court ruled that Ms. Volkman would be permitted "to prove a defective 'for cause' termination and nominal damages, if any." The order did not elaborate the reasons for the court's rulings. Hanover maintains that the court's decision to limit any award to nominal damages was based on the fact that, even if Ms. Volkman's termination was without cause, the Employment Agreement entitled her to only 15 days' pay from the date of termination – which she had, in fact, already received.

On March 22, 2013, Ms. Volkman voluntarily dismissed the Employment Agreement Action with prejudice by stipulation of counsel pursuant to Maryland Rule 2-506(a).

*The Arbitration Proceeding*

On October 10, 2012, while the Employment Agreement Action was pending, Hanover invoked the arbitration provision in the Shareholders' Agreement to determine what it was required to pay Ms. Volkman when it redeemed her stock under the Shareholders' Agreement.[7] The arbitrator, as designated in the Shareholders' Agreement, was the Voting Trustee under the voting trust, an attorney who had worked for Mr. Hoff

---

[7] As noted above, Hanover had already sent Ms. Volkman a note in the amount of $1,900 with respect to her stock in February 2010, although payment under that note was deferred.

and his companies since the 1980s and who was a member of the Hanover board of directors.[8]

In a written decision dated October 17, 2013, the arbitrator specifically noted that he was not deciding any issues related to OCC's termination of Ms. Volkman (*i.e.*, whether or not there was "good cause"). He calculated the amount Hanover would owe for termination with good cause ($1,900) and without good cause ($19,000). However, he concluded that, regardless of whether there was good cause or not, Hanover in fact owed her only $10 for her Hanover shares. He reached that conclusion on the basis of his additional finding that Ms. Volkman had violated a separate Restriction Agreement by revealing the relationship of OCC to Hanover when she filed her complaint in the Employment Agreement Action. The arbitrator also awarded the costs of the arbitration proceeding to Hanover and against Ms. Volkman, which he computed to be $12,740, after subtracting the $10 awarded to Ms. Volkman for her stock. The arbitrator acknowledged in a footnote that Ms. Volkman had disputed the authority of the arbitrator and had not participated in the proceeding.

On August 1, 2014, Hanover successfully obtained a default judgment in the Circuit Court for Montgomery County confirming the award. Ms. Volkman did not appeal that judgment.

---

[8] At the time of Ms. Volkman's termination in 2010, the arbitrator, as counsel to OCC and Hanover, had attempted to negotiate a severance agreement on behalf of OCC with Ms. Volkman's counsel and had sent her the purchase note for $1,900 on behalf of Hanover for redemption of her stock.

*The Shareholders' Agreement Action*

As described above, on November 2, 2012, the Circuit Court had ruled in the Employment Agreement Action that Ms. Volkman would be entitled, at most, to nominal damages for her breach of contract claim against OCC and Mr. Hoff. A little more than a month after that ruling (but before she voluntarily dismissed that action), on December 17, 2012, Ms. Volkman served Hanover with a complaint that she filed in a state trial court in Minnesota. That complaint named Hanover as the lone defendant and alleged that it had violated its contract with her – *i.e.,* the Shareholders' Agreement ("the Shareholders' Agreement Action").[9] She alleged that Hanover did so by "declaring the existence of Good Cause to terminate [her] employment . . . when in fact there was no factual basis upon which either OCC or Hanover, in the exercise of good faith, could find Good Cause as that term is defined in either the Employment Agreement or the Hanover Shareholders' Agreement." She sought specific performance – the return of her Hanover stock – a remedy explicitly provided for in the Shareholders' Agreement.

Hanover moved to dismiss the complaint, asserting that the Minnesota court lacked *in personam* jurisdiction of Hanover. The Minnesota trial court denied that motion in April 2013. Hanover appealed that decision to the Minnesota Court of Appeals, which affirmed

---

[9] Ms. Volkman apparently served the complaint in this case approximately a month before filing it on January 16, 2013.

10

the trial court decision on March 3, 2014. *Volkman v. Hanover Investments, Inc.*, 843 N.W.2d 789 (Minn. Ct. App. 2014).

However, as recounted in the next section of this opinion, by the time the case returned to the Minnesota trial court, Hanover had filed a declaratory judgment action in Maryland involving the same issues, Hanover had prevailed in the Circuit Court, and Ms. Volkman had appealed that disposition. As a result, on January 19, 2015, the Minnesota trial court dismissed the Shareholders' Agreement Action, but explicitly reserved jurisdiction to reopen the case depending on the resolution of the Maryland appeal.

*The Declaratory Judgment Action*

On June 26, 2013 – two months after the Minnesota trial court denied Hanover's motion to dismiss, and while that decision was on appeal – Hanover filed a declaratory judgment action against Ms. Volkman in the Circuit Court for Montgomery County ("Declaratory Judgment Action"). The complaint was brought not only on behalf of Hanover, but also listed other Hanover shareholders and OCC as plaintiffs. Hanover sought a declaration concerning the rights of the parties under the Shareholders' Agreement and, more specifically, that it had complied with its obligations under that agreement in connection with the redemption of Ms. Volkman's stock as a result of her termination from employment with OCC. On the civil cover sheet submitted with the complaint, Hanover checked a box "yes" for "related case pending?" and entered the number of the Employment Agreement Action that had been dismissed some months earlier. The case

11

was assigned to the same judge who had earlier been assigned to the Employment Agreement Action.

Shortly thereafter, Ms. Volkman filed an answer to the complaint in which, in addition to admitting or denying factual allegations and asserting affirmative defenses, she noted the pendency of "an identical case" – the Shareholders' Agreement Action – in Minnesota and asked the Circuit Court to either decline jurisdiction or stay the proceedings in the Declaratory Judgment Action pending a final judgment in the Shareholders' Agreement Action.

In late March 2014, the parties filed cross-motions for summary judgment. Repeating the defense asserted in her answer to the complaint, Ms. Volkman asked the Circuit Court to dismiss or stay the proceedings because of the pending Shareholders' Agreement Action in Minnesota. In its summary judgment motion, Hanover argued that (1) the Shareholders' Agreement imposed no duty to complete an independent investigation into OCC's termination of Ms. Volkman, and (2) the dismissal of the Employment Agreement Action with prejudice entitled Hanover to judgment as a matter of law. In April and May 2014, the Circuit Court denied the parties' respective motions without a hearing, and did not elaborate on the reasons for that ruling.

A bench trial on the merits was held on June 16 and 17, 2014. At the close of the plaintiffs' evidence, Ms. Volkman renewed her motion to dismiss the action in light of the pending Shareholders' Agreement Action. The Circuit Court declined to do so, citing *Marriott Corp. v. Village Realty & Inv. Corp.*, 58 Md. App. 145 (1984), for the proposition

that a declaratory judgment action could be filed "defensively" even if there was similar litigation "pending or impending" in another court.

On August 14, 2014, the Circuit Court orally rendered its decision in the case in favor of the plaintiffs. In a written declaratory judgment issued the same day, the Circuit Court declared that the Shareholders' Agreement did not require Hanover to conduct an "independent investigation" into OCC's termination of Ms. Volkman and that, in compliance with the Shareholders' Agreement, the Hanover board of directors had agreed with OCC's decision that Ms. Volkman was terminated for good cause when it redeemed her stock.[10]

*Appeal of the Declaratory Judgment Action*

Ms. Volkman appealed to the Court of Special Appeals. She argued that the Circuit Court should not have heard the case while the Shareholders' Agreement Action involving the same issues was pending. She also challenged the Circuit Court's interpretation of the Shareholders' Agreement and its finding concerning good cause.

In a reported decision, the Court of Special Appeals held that the Circuit Court erred in issuing a declaratory judgment while the Shareholders' Agreement Action was pending. 225 Md. App. 602 (2015). Because this holding rendered Ms. Volkman's challenges to

---

[10] Although not part of the written declaration, the Circuit Court also found in its oral ruling that OCC had good cause for terminating Ms. Volkman's employment.

the substance of the Circuit Court's decision moot, the Court of Special Appeals declined to address them.

Hanover petitioned this Court for a writ of *certiorari*, which we granted.

**II**

**Discussion**

The sole question for review is whether the Circuit Court erred in issuing a declaratory judgment while the Shareholders' Agreement Action was pending.

*A.* **Declaratory Judgment Actions – Generally**

The Maryland Uniform Declaratory Judgments Act is codified in Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §3-401 *et seq*. A declaratory judgment action – as the name implies – is a vehicle by which a person may obtain a judicial declaration to "afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." CJ §3-402. A declaratory judgment action is designed simply to "terminate the uncertainty or controversy giving rise to the proceeding" and is available whether or not corresponding legal or equitable relief is requested or even available. CJ §§3-403, 409. In other words, under the Declaratory Judgments Act, a party may seek a definitive statement of the "correct answer" to a disputed question without asking that the court also enforce its decision by, for example, awarding monetary damages to the prevailing party or by ordering another party to act (or refrain from acting) in a certain way.

The "uncertainty or controversy," however, must be justiciable. A declaratory judgment action may not be used to resolve abstract questions or questions that are moot or that may never arise. *E.g., Koontz v. Ass'n of Classified Emp.*, 297 Md. 521, 527-29

14

(1983) (affirming dismissal of declaratory judgment action when question presented had become moot and "entirely academic"). In short, a declaratory judgment action "should not be used where a declaration would not serve a useful purpose . . . ." *Hamilton v. McAuliffe*, 277 Md. 336, 339-40 (1976); *see also* E. Borchard, *The Uniform Declaratory Judgments Act*, 18 Minn. L. Rev. 239, 267 (1934).

The existence of other potential causes of action or remedies is not a bar to pursuit of a declaratory judgment. Thus, a party may seek a declaratory judgment "notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute." CJ §3-409(c). As this Court previously noted, the General Assembly added this proviso to the Declaratory Judgments Act to make clear that a party is not precluded from seeking declaratory relief simply because that party has the option of pursuing some other remedy. *Falls Road Community Ass'n, Inc. v. Baltimore County*, 437 Md. 115, 136 n.20 (2014). However, if a statute "provides a special form of remedy for a specific type of case," that statutory procedure takes precedence. CJ §3-409(b).

## B. *Discretion of Circuit Court to Grant or Deny Declaratory Relief*

The Declaratory Judgments Act appears to entrust the decision whether to grant or deny declaratory relief to the trial court's discretion. CJ §3-409 ("a court *may* grant a declaratory judgment") (emphasis added). Accordingly, it is often said that an appellate court reviews the decision to do so under an "abuse of discretion" standard. *See, e.g., Sprenger v. Public Service Comm'n*, 400 Md. 1, 21 (2007); *Converge Services Group, LLC v. Curran*, 383 Md. 462, 477 (2004).

15

In some respects, however, the apparent leeway given to the trial court is just that – apparent – and the trial court may actually be required as matter of law to issue declaratory relief or to abstain from doing so. This Court has "insisted that courts declare the rights of the parties when presented with an action properly susceptible to a declaratory judgment." *Post v. Bregman*, 349 Md. 142, 159-60 (1998). Accordingly, many cases have noted that "dismissal is rarely appropriate in a declaratory judgment action." *Christ v. Department of Natural Resources*, 335 Md. 427, 435 (1994) (collecting cases).

Conversely, there are circumstances when a court should not entertain an action for declaratory relief. Pertinent to this case, a court should not do so when there is already a pending action "involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated." *Sprenger* 400 Md. at 27-28 (existence of a similar, pending action is "fatal" to a declaratory judgment action); *see also Waicker v. Colbert*, 347 Md. 108, 113 (1997); *A.S. Abell Co. v. Sweeney*, 274 Md. 715, 720-21 (1975); *Brohawn v. Transamerica*, 276 Md. 396, 406 (1975). This judicial reticence has long been part of the guidance concerning declaratory judgments. E. Borchard, Declaratory Judgments (2d ed. 1941) 350 ("it is manifestly unwise and unnecessary to permit a new petition for a declaration to be initiated" when there is a similar, pending action). It is widely followed in other jurisdictions.[11]

---

[11] *See, e.g.*, *First Midwest Corporation v. Corporate Finance Associates*, 663 N.W.2d 888, 893 (Iowa 2003); *Sensient Colors, Inc. v. Allstate Insurance Co.*, 939 A.2d 767 (N.J. 2008); *Woodmen of the World Life Insurance Society v. Yelich*, 549 N.W.2d 172 (Neb. 1996); *Simmons v. Superior Court in and for L.A. County*, 214 P.2d 844 (Ca. 1950); *see generally* 22A Am. Jur. 2d *Declaratory Judgments* §§36-44.

There are strong policy considerations for the principle that a court should decline to issue a declaratory judgment in deference to a pending action, including conserving judicial resources,[12] avoiding conflicting judgments,[13] and preventing evasion of the final judgment requirement for appeal.[14]  Were this rule not followed, "almost any pending action could be interrupted and held at bay until the determination, in one or more subsequently instituted declaratory judgment actions, of issues culled out of the pending action." *Waicker,* 347 Md. at 115 (internal quotation marks and citation omitted).

An example is *Haynie v. Gold Bond Building Products*, 306 Md. 644 (1986).  In that case, an employee injured on the job initially applied for workers' compensation benefits, but later brought a tort suit, alleging that the employer had disabled a safety mechanism that may have prevented his injury.  While that tort suit was pending, the employee filed a separate action seeking a declaration that his initial election to receive workers' compensation benefits did not bar his subsequent tort suit.  The circuit court ultimately issued a declaratory judgment – adverse to the employee.  The employee appealed the merits of that decision.

This Court did not reach the merits of the circuit court's decision.  Instead, it held that the circuit court should not have entertained the declaratory judgment action and remanded the case to the circuit court with instructions to dismiss that action.  The Court

---

[12] *Waicker*, 347 Md. at 115.

[13] *Sprenger*, 400 Md. at 27.

[14] *Turnpike Farm Limited Partnership v. Curran*, 316 Md. 47, 49 (1989).

observed that the allegations, as well as the defense, in the two actions were identical. Relying on *Brohawn* and the Borchard treatise, the Court held that, once a common law remedy is invoked to resolve a dispute – in *Haynie*, the earlier-filed, pending tort action – a party is barred from instituting a second lawsuit to "obtain a declaratory judgment to resolve the same matter." *Id.* at 650. Were the rule otherwise, "each separate disputed issue" in any given case "could be made the subject of a separate declaratory judgment action," and thereby allow a party to bypass the final judgment requirement for appellate review. *Id.* at 653-54.

In *A.S. Abell*, this Court, while upholding the dismissal of a declaratory judgment action in the face of an earlier-filed, pending action, observed that the principle precluding a duplicative declaratory judgment action was to be followed "absent very unusual and compelling circumstances." 274 Md. at 721. The Court has reiterated, on several occasions, the exception to the general rule for "unusual and compelling circumstances," but has not found that exception applicable in the cases presented to it to date. *See, e.g., Waicker*, 347 Md. at 113-15; *Haynie*, 306 Md. at 652; *State v. 91st Street Joint Venture*, 330 Md. 620, 630; *but cf. Harpy v. Nationwide Mutual Fire Insurance Co.*, 76 Md. App. 474, 482 (1988) (holding that pending tort action would not resolve issue presented in declaratory judgment action and stating, as an alternative holding, that even if the issue would be resolved in the tort action, "unusual and compelling circumstances" existed for proceeding with the declaratory judgment action without analyzing the latter issue).

18

## C.     *Application to this Case*

In this case, the Shareholders' Agreement Action qualifies as an earlier-filed, pending action that would, under our customary analysis, operate as a bar to the later-filed Declaratory Judgment Action. The two actions involve essentially the same parties and both actions concern the identical issue – the propriety of Hanover's redemption of Ms. Volkman's Hanover stock under the Shareholders' Agreement. Hanover disputes whether the parties are the "same," whether the issues are "identical," and whether the Shareholders' Agreement Action was truly pending first. It further contends that, even if it loses on each of those scores, there are unusual and compelling circumstances that justified the decision of the Circuit Court to proceed with its declaratory judgment action.

*Same Parties*

Hanover argues that the two actions did not involve the same parties because, while the Shareholders' Agreement Action was brought by Ms. Volkman against Hanover and the Declaratory Judgment Action was filed by Hanover against Ms. Volkman, there are additional plaintiffs in the Declaratory Judgment Action – other Hanover shareholders, and Hanover's subsidiary, OCC. The mere existence of additional parties on one side of the case does not necessarily mean that a court must proceed with an otherwise duplicative declaratory judgment action. *Waicker*, 347 Md. at 113 n.2 (the presence of additional parties "does not, in and of itself, render this declaratory judgment action permissible"). To hold otherwise would be to invite a party to add another nominal plaintiff to circumvent this limitation on declaratory judgment actions.

19

In this case, the interest of Hanover's other shareholders and its wholly-owned subsidiary in the Declaratory Judgment Action appear to be co-extensive with the interest of Hanover. None of the other named plaintiffs has staked out a different position from Hanover in the litigation.[15] All plaintiffs are represented by the same counsel, who has advanced the same arguments on their collective behalf. For purposes of our analysis, then, the Shareholders' Agreement Action and the Declaratory Judgment Action involve the "same parties."

*Identical Issues*

Hanover also argues that the two actions do not involve "identical issues." Hanover claims that the primary issue in the Declaratory Judgment Action is the interpretation of the Shareholders' Agreement, while the primary issue in the Shareholders' Agreement Action is the Employment Agreement (despite, apparently, the fact that the complaint in the Shareholders' Agreement Action alleged a breach of the Shareholders' Agreement). The standard, however, is whether the question presented in the declaratory judgment

---

[15] Hanover asserted in its brief that, "as filed," the Shareholders' Agreement Action "did not allow the shareholders of Hanover or OCC to be heard on any issues." This just restates the identity of the parties in the Shareholders' Agreement Action "as filed." Hanover does not suggest that the other shareholders or OCC attempted to intervene in that action and were rebuffed. Nor does it indicate in what respect, if any, they would wish to be heard differently than Hanover.

At oral argument, Hanover's counsel suggested, without elaborating, that some of the employee/shareholders might have a different view of how the Shareholders' Agreement should be construed – the issue on which the declaratory judgment was sought. Counsel did not elaborate on what that difference would be; no alternative construction was presented by Hanover's counsel on behalf of other shareholders at the trial of this case.

20

action "*can be* adequately decided,"[16] or "*may be* adjudicated,"[17] in the earlier-filed, pending action. Absolute identity of all issues in both cases is not the standard. *Sprenger*, 400 Md. at 27-28 (declaratory relief was inappropriate because the two actions at issue dealt with "*almost* exactly the same issues") (emphasis added).

There is little doubt that the question presented in the Declaratory Judgment Action "can be" or "may be" decided in the Shareholders' Agreement Action. In the Shareholders' Agreement Action, Ms. Volkman sought return of her Hanover stock – on the basis of her allegation that Hanover violated the Shareholders' Agreement in the way it redeemed her stock. In the Declaratory Judgment Action, Hanover asked for a declaration that it acted in compliance with the Shareholders' Agreement when it redeemed Ms. Volkman's stock. Indeed, in its complaint in the Declaratory Judgment Action, Hanover cited the Shareholders' Agreement Action to demonstrate that there was an "actual controversy" between it and Ms. Volkman with respect to that issue. Whether or not Ms. Volkman were to prevail in the Shareholders' Agreement Action, the trial court would have to resolve whether Hanover acted in compliance with the Shareholders' Agreement when it redeemed Ms. Volkman's stock. Either Hanover acted properly – and Ms. Volkman is not entitled to return of the stock – or Hanover acted improperly – and Ms. Volkman is entitled to its

---

[16] *A.S. Abell*, 274 Md. at 720 (emphasis added),

[17] *Waicker*, 347 Md. 113 (emphasis added).

21

return.  The Declaratory Judgment Action sought resolution of the same question that was already pending in another court.[18]

*Whether the Shareholders' Agreement Action was Pending First*

While there can be no dispute that Ms. Volkman filed the Shareholders' Agreement Action more than five months before Hanover filed the Declaratory Judgment Action, Hanover attempts to reverse that chronology by associating the Declaratory Judgment Action with the Employment Agreement Action.  It argues that, because the Circuit Court for Montgomery County was the venue (by virtue of the forum selection clause in the Employment Agreement) of the Employment Agreement Action, that court "was the first jurisdiction in possession of the disputes between the parties."  Hanover essentially asks that we tack the Declaratory Judgment Action onto the previously dismissed Employment Agreement Action to defeat the "pending" status of the Shareholders' Agreement Action.[19]

---

[18] Hanover also argues that the two actions are not the same because the plaintiffs seek different relief in the two actions:  Ms. Volkman seeks equitable relief – specific performance of the Shareholders' Agreement – while Hanover asks for a declaration that it has already complied with the Shareholders' Agreement.  However, it is not surprising that the parties ask for different relief, even though the decision in each case turns on the same issue.  Moreover, Hanover's argument proves too much.  A declaratory judgment action by definition seeks declaratory relief and, when such an action overlaps with a pending common law action, will always seek different relief from that lawsuit.  If Hanover's argument had merit, a declaratory judgment action would *never* be barred by the existence of a pending overlapping lawsuit.

[19] Hanover quotes a passage from *State v. 91st Street Joint Venture*, 330 Md. 620, 629 (1993), that a "court of co-ordinate jurisdiction, first in possession of any portion of the subject-matter should not be disturbed by any other court" (internal quotation marks and citations omitted).  That case, however, does not stand for the novel proposition Hanover ascribes to it – *i.e.*, that a circuit court somehow retains jurisdiction of a matter even after the matter has been dismissed with prejudice.  Rather, consistent with *Waicker*, *Brohawn*, *A.S. Abell*, and the other cases described in the text, the Court in *91st Street Joint*

22

This may be creative, but it is not chronological. The simple fact is that the Shareholders' Agreement Action *was* pending when the Declaratory Judgment Action was filed and the Employment Agreement Action was not.

In support of this argument, Hanover points to several policy considerations – judicial economy, discouragement of forum shopping, consistency in rulings. Those considerations do not affect the chronology of events or whether a particular matter is "pending" when another is filed. But such considerations are relevant to the question whether there are "unusual and compelling circumstances" in a particular case for deviating from the usual rule that a court should not entertain a declaratory judgment action concerning an issue between the same parties in a pending case. Accordingly, we address those considerations in the next part of this opinion.

*Whether there are "Unusual and Compelling Circumstances"*

Hanover offers several reasons that it contends are unusual and compelling circumstances justifying a deviation from the usual rule this Court has applied when a declaratory judgment action is duplicative of a pending lawsuit.

First, Hanover stresses several policy considerations, including discouraging forum shopping by litigants, allowing Maryland courts to interpret a contract governed by Maryland law, and avoiding a "multiplicity of suits." Hanover argues that Ms. Volkman, after receiving an unfavorable ruling in the Employment Agreement Action in Maryland,

---

*Venture* held that a circuit court should not have entertained a declaratory judgment action when an action was already pending in another circuit court that was "materially the same." 330 Md. at 630.

engaged in forum shopping by filing the Shareholders' Agreement Action in Minnesota. Of course, it is also true that it was only after Hanover suffered an adverse ruling in the Shareholders' Agreement Action in Minnesota that it filed the Declaratory Judgment Action in Maryland about the same issue. Thus, while we have no desire to encourage forum-shopping,[20] the argument cuts both ways in the controversy between these parties. Moreover, Minnesota is not a jurisdiction foreign to this dispute. Ms. Volkman lived and worked there while employed by OCC. The events resulting in her termination and the involuntary redemption of her stock occurred there.

Hanover argues that it would be preferable to have a Maryland court construe the Shareholders' Agreement because that agreement states that it is "subject to and governed by the laws of the State of Maryland." But this does not mean that Minnesota courts are disqualified from resolving disputes over that agreement. Both Maryland and Minnesota courts regularly apply the laws of other jurisdictions, and Minnesota courts honor legitimate choice-of-law clauses in contracts, just as Maryland courts do. *See Combined Insurance Co. of America v. Bode*, 77 N.W.2d 533, 536 (Minn. 1956) ("We are . . . committed to the rule that the parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern."); *Cunningham v. Feinberg*, 441 Md. 310, 326 (2015) ("If the contract contains a choice of law provision, we apply

---

[20] *American Motorists Insurance Co. v. ARTRA Group, Inc.*, 338 Md. 560, 578 (1995).

generally the law of the specified jurisdiction."). Hanover suggests no reason why a Minnesota court would deviate from that rule.

Finally, it goes without saying that allowing an *additional* action to proceed does nothing to trim a "multiplicity" of actions, no matter where they are filed.

Hanover also suggests that the Shareholder Agreement Action is precluded in Minnesota as a result of prior Maryland court proceedings, including Ms. Volkman's voluntary dismissal of the Employment Agreement Action with prejudice and the entry of a judgment confirming the arbitration award concerning the amount of compensation to be paid her for the stock redemption. This appears to be an argument of issue preclusion – *e.g, res judicata,* collateral estoppel – that may be made in defense of the Shareholders' Agreement Action.[21] Without assessing the merits of such a defense, it is not a matter that justifies an additional parallel declaratory judgment action.

Hanover also points to the fact that the judge who presided over the Employment Agreement Action was also assigned to the Declaratory Judgment Action. It argues that the judge's familiarity with the issues from the earlier action established "unusual and compelling circumstances" for allowing the Declaratory Judgment Action to proceed despite the existence of a pending action concerning the same issues. The record does not support this argument. As an initial matter, it does not appear – at least from what the

---

[21] During legal argument at the trial of this case, the Circuit Court raised the question of whether the result would be controlled by the result in the Employment Agreement Action. However, when it rendered its oral opinion deciding this case, the Circuit Court made no mention of the earlier action and relied solely on the evidence presented in this case.

parties have presented to us and from what we have gleaned from our own review of the court file in the Employment Agreement Action – that the Employment Agreement Action delved deeply into the matter at issue in the Declaratory Judgment Action, that is, whether Hanover and OCC acted properly during Ms. Volkman's termination and stock repurchase. As described above, most of the litigation preceding the voluntary dismissal of the Employment Agreement Action concerned the viability of Ms. Volkman's tort claims against OCC. The parties disputed, for example, whether tort or fiduciary duties existed between them and whether certain "financial interest" tort defenses applied. In its pleadings and motions, OCC never addressed the underlying contract dispute (except to deny liability generally) until its motion to dismiss filed only two months before trial, and even then only disputed the availability of *damages* – not whether the facts supported a good cause termination. Moreover, even if there was a close relation between the two cases, it is apparent from the transcript of the Declaratory Judgment Action that the judge presiding over the Declaratory Judgment Action candidly admitted that he had little memory of the prior action.[22]

---

[22] For example, after the judge indicated that he did not remember the Employment Agreement Action, the parties stipulated to certain facts about the earlier action and the following colloquy took place:

| [Counsel for Hanover]: | [Stipulations] 6 and 7 addresses the questions the Court had yesterday that Volkman had filed suit in this court alleging that OCC had breached the employment agreement . . . . |
|---|---|
| The Court: | What was the result of that case? |

*Waiver*

Hanover also argues that Ms. Volkman somehow waived her position that the Declaratory Judgment Action should be stayed or dismissed in light of the Shareholders' Agreement Action. This argument appears to be based on a misreading of the record. In its brief, Hanover states that Ms. Volkman first raised the possibility of staying the Declaratory Judgment Action in a summary judgment motion in March 2014 after completion of discovery. Hanover repeated this contention at oral argument, stating that Ms. Volkman never asked to stay the Declaratory Action until "90 days before trial . . . after an answer had been filed more than eight months prior." Hanover is incorrect. In her answer to the complaint in this case filed in September 2013, Ms. Volkman requested that the Circuit Court "exercise its discretionary authority to abstain from accepting jurisdiction" because of the "pendency of the identical case and controversy in the courts of the State of Minnesota." She reiterated that position in her pretrial motions and again at trial. There was no waiver.

---

| [Counsel for Hanover]: | That action as stipulated to here was dismissed with prejudice on March 22, 2013, Your Honor. |
| --- | --- |
| The Court: | Was that a decision on the merits or was that some procedural matter? I don't remember. |
| [Counsel for Hanover]: | It was procedural as I understand it . . . . |

Counsel for Hanover then noted that the parties disagreed about whether the voluntary dismissal of the Employment Agreement Action had preclusive effect in the Declaratory Judgment Action. The Circuit Court's lack of memory concerning the earlier Employment Agreement Action is certainly understandable as the Employment Agreement Action never went to trial and, according to the court docket, there were only two motions hearings in that case, each approximately one hour in duration.

27

*Comity*

Considerations of comity also counsel against entertaining the Declaratory Judgment Action in these circumstances. The doctrine of comity, which has long been a part of the common law of Maryland,[23] counsels us to show "deference and respect" to the courts of other jurisdictions.[24]

It is true that, at the time the Circuit Court heard this Declaratory Judgment Action, the Minnesota court had issued no judgment which our courts would be required to respect under the federal Full Faith and Credit Clause. United States Constitution, Article IV, §1. However, comity's contours are not limited to the mandate of the Full Faith and Credit Clause. While "not a matter of obligation," *Port v. Cowan*, 426 Md. 435 (2012), the doctrine of comity can be used as a "rule of jurisdictional courtesy or the recognition of an accepted order of precedence" among courts, *Apenyo v. Apenyo*, 202 Md. App. 401, 410 (2011). This "accepted order of preference" is reflected in the principle that a court should not entertain a declaratory judgment action when there is an earlier-filed, pending action dealing with the same parties and the same issues.

*The Circuit Court's Reasoning*

Finally, we address the reason actually stated by the Circuit Court for rejecting Ms. Volkman's requests that it stay or dismiss the Declaratory Judgment Action, although

---

[23] *E.g., Holloway v. Safe Deposit & Trust Co. of Baltimore*, 151 Md. 321, 334 (1926).

[24] *Washington Suburban Sanitary Commission v. CAE-Link Co.*, 330 Md. 115, 140 (1993).

28

Hanover has not relied on that reason. In the one instance in which it explained its reasoning, the Circuit Court appeared to be operating under a misimpression of Maryland law. In rejecting a motion to stay or dismiss made by Ms. Volkman at trial, the Circuit Court cited *Marriott Corp. v. Village Realty & Inv. Corp.*, 58 Md. App. 145 (1984) for the proposition that a declaratory judgment action could be brought "defensively" when litigation is "pending or impending in another state." Contrary to the Circuit Court's impression, while the *Village Realty* decision did hold that a party who *anticipates* litigation over a particular dispute may bring a declaratory judgment action to resolve that dispute, the intermediate appellate court did not uphold the filing of a declaratory judgment action in that case while a related action concerning the same dispute was "pending" elsewhere. Indeed, in a footnote, the *Village Realty* court cited *Brohawn* as an example of a circumstance in which proceeding with a declaratory judgment action would be "inappropriate." 58 Md. App. at 153 n.3. Thus, the case on which the Circuit Court was relying actually favored a stay or dismissal of the Declaratory Judgment Action.

### III

### Conclusion

At the time the Declaratory Judgment Action was filed in the Circuit Court, the Shareholders' Agreement Action was pending in Minnesota – an action that involved the same parties and that raised the essentially same issue presented in the Declaratory Judgment Action. The fact that the Circuit Court had previously dealt with, and dismissed, an earlier related action – the Employment Agreement Action – did not create "unusual and compelling circumstances" that would justify an exception in this case to the principle

29

that a court should not entertain a declaratory judgment action when there is a pending lawsuit involving the same issues. Accordingly, the Circuit Court abused its discretion when it declined to dismiss or stay the Declaratory Judgment Action. We express no opinion as to the merits of the Circuit Court's ruling on the substantive issues in the case, but only hold that its ruling was premature.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**

Circuit Court for Montgomery County
Case No. 335496V
Argued:  September 7, 2016

HANOVER INVESTMENTS, INC. et al.

v.

SUSAN J. VOLKMAN

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Getty,
Harrell, Glenn T., Jr. (Senior Judge,
        Specially Assigned)

JJ.

Dissenting Opinion by Harrell, J.

Filed: July 31, 2017

With respect, I dissent.

The Majority Opinion explains our declaratory judgment jurisprudence, noting that Md. Code, Courts & Judicial Proceedings Art., § 3-409(a) provides generally for the exercise of judicial discretion regarding whether to grant a declaratory judgment. The common law guides the exercise of that discretion. For example, "dismissal is rarely appropriate in a declaratory judgment action." *Christ v. Dep't of Natural Resources*, 335 Md. 427, 435, 644 A.2d 34, 37 (1994) (citations and quotation marks omitted). The existence of pending, parallel declaratory actions (at least within competing Maryland courts) "involving the same parties and . . . identical issues," *Sprenger v. Pub. Serv. Comm'n of Maryland*, 400 Md. 1, 26, 926 A.2d 238, 253 (2007) (citations and quotation marks omitted)… "warrants dismissal of one of the actions in the interests of "conserving judicial resources, avoiding conflicting judgments, and preventing evasion of the final judgment requirement for appeal." Maj. Slip Op. at 15-16 (footnotes omitted). The Majority Opinion recognizes also that "very unusual and compelling circumstances" may overcome these underlying policy considerations and permit a trial judge to allow nonetheless a potentially redundant declaratory action to proceed. *A. S. Abell Co. v. Sweeney*, 274 Md. 715, 721, 337 A.2d 77, 81 (1975).

After determining that the actions here and in Minnesota share essentially the same parties and issues, the Majority Opinion rejects Hanover's arguments why the particular circumstances of the present case are sufficiently unusual and compelling so as to render permissible the trial judge's exercise of discretion not to dismiss the Maryland

action. It is at this analytical crossroads that I take a different fork in the road than the Majority Opinion. How do I disagree with thee? Let me count the ways.[1]

The Majority Opinion rejects Hanover's policy arguments, "including discouraging forum shopping by litigants, allowing Maryland courts to interpret a contract governed by Maryland law, and avoiding a 'multiplicity of suits.'" Maj. Slip Op. at 23. Hybridizing the age-old arguments "two wrongs make a right" and "he started it," the Majority Opinion minimizes the importance of discouraging forum-shopping, condoning Volkman's exercise of the disfavored tactic because "it is also true that it was only after Hanover suffered an adverse ruling in the Shareholders' Agreement Action in Minnesota that it filed the Declaratory Judgment Action in Maryland about the same issue." Maj. Slip Op. at 24.

The Majority Opinion goes on to rain on Hanover's parade by rejecting the argument that Maryland courts are better equipped to construe the Shareholders' Agreement, which is "subject to and governed by the laws of the State of Maryland," because "Minnesota courts honor legitimate choice-of-law clauses in contracts, just as Maryland courts do." Maj. Slip Op. at 24 (citations omitted). This factor makes reasonable certainly the circuit court's discretionary option to defer to the Minnesota court in this case, but it does little to demonstrate the <u>unreasonableness</u> of what happened actually here—the trial judge's decision to hear and decide the Maryland declaratory judgment action, notwithstanding the pendency of the Minnesota action. I am reticent to

---

[1] Apologies to Elizabeth Barrett Browning and her *Sonnet 43*, Lines 1-2.

2

join in the Majority Opinion's reasoning that the Minnesota courts are at least as well-equipped to apply and interpret correctly Maryland law as are Maryland courts.[2]

Third, the Majority Opinion states that "allowing an *additional* action to proceed does nothing to trim a 'multiplicity' of actions, no matter where they are filed." Maj. Slip Op. at 25 (emphasis in original). Perhaps in a narrow view this is true because allowing the Maryland action to proceed admits literally an additional judicial proceeding into the world. Viewing the case from a mile high, however, our choice should be whether to curtail, in this instance, forum-shopping, regardless of "who started it." Allowing the Maryland proceeding to stand sends the message that parties such as Volkman may not avoid a Maryland forum—with a variety of connections to the underlying litigation—to seek a perceptually more favorable jurisdiction.

Next, the Majority Opinion rejects, as a potential unusual and compelling circumstance, "Ms. Volkman's voluntary dismissal of the [Maryland] Employment Agreement Action with prejudice and the entry of a judgment confirming the [Maryland] arbitration award concerning the amount of compensation to be paid her for the stock redemption." Maj. Slip Op. at 25. I agree that this circumstance did not preclude, as a matter of law, Volkman from initiating suit in Minnesota, but it seems to be clear that,

---

[2] Perhaps my timidity in this regard stems from the retirement from the Supreme Court of Minnesota in August 2015 of the Hon. Alan C. Page (formerly one of the "Purple People Eaters" defensive line of the Minnesota Vikings), one of my athletic and legal heroes.

because she chose to bring suit there, instead of seeking to vacate the Maryland arbitration award, she engaged blatantly in forum-shopping.

Finally, the Majority Opinion rejects Hanover's argument that the trial judge in this action, having presided over the earlier employment agreement dispute, was in a position to be unusually and compellingly more familiar than the Minnesota court with the basis of the underlying dispute. The Majority Opinion states that the earlier action focused primarily on Volkman's tort claims and dealt minimally with the issues in this declaratory action, and that, in any event, the trial judge admitted to a limited recollection of the earlier proceeding. Maj. Slip Op. at 26. Although the judge's memory, imperfect as it may have been on that given day, may dilute somewhat this factor as a standalone unusual and compelling circumstance, considered with the other factors (and that he could get up to speed likely faster than a Minnesota court), it lends an additional hue of judicial reasonableness painted by all of the factors.

The cases relied on in the Majority Opinion for the proposition that the Court "has not found [the unusual and compelling circumstances] exception applicable in the cases presented to it to date" were decided only in the context of like actions pending simultaneously in Maryland courts. Maj. Slip Op. at 18. Our opinion in *A. S. Abell*, for example, upheld the Circuit Court for Baltimore County's dismissal of a declaratory action regarding the same issues and parties as involved in a case pending in the District Court of Maryland, Eighth District (Baltimore County). 274 Md. at 716, 337 A.2d at 78. In *Waicker*, we held that the Circuit Court for Baltimore City abused its discretion by ruling on a declaratory judgment action involving the same parties and issues as another

4

case pending in the same court. *Waicker v. Colbert*, 347 Md. 108, 699 A.2d 426 (1997). Similarly, in *Haynie*, we ruled that "there were no very unusual and compelling circumstances justifying the declaratory judgment" while another case, with the same issues and parties, was pending before the same court, the Circuit Court for Baltimore City. *Haynie v. Gold Bond Bldg. Prod.*, 306 Md. 644, 652, 511 A.2d 40, 44 (1986).[3] Also, in *91st Street*, we held that "the Circuit Court for Baltimore City abused its discretion when it enjoined the State and Ocean City from proceeding with the Worcester County action previously filed" in the Circuit Court for Worcester County. *State v. 91st St. Joint Venture*, 330 Md. 620, 632, 625 A.2d 953, 958 (1992). More recently, our opinion in *Sprenger*, a case involving dueling actions in the Circuit Courts for Baltimore City and Garrett County, stated that "it is inappropriate for a court to entertain a declaratory judgment action if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated." 400 Md. at 26, 926 A.2d at 253 (citations and quotation marks omitted). Thus, the efficiencies to be achieved in deciding these cases represented purely matters of internal case management of our State Judiciary. We were not concerned, as here, with whether it was reasonable for a Maryland court to proceed, even though a foreign action of similar ilk was pending.

---

[3] The original action was filed "in what was then the Baltimore City Court (now part of the Circuit Court for Baltimore City)." *Haynie v. Gold Bond Bldg. Prod.*, 306 Md. 644, 649, 511 A.2d 40, 42 (1986).

The present case involves extraterritoriality, an element quite unusual undeniably in contrast with the Majority Opinion's cited, and somewhat inapposite, authorities. Moreover, as conceded by the Majority Opinion, "at the time the Circuit Court heard this Declaratory Judgment Action, the Minnesota court had issued no judgment which our courts would be required to respect under the federal Full Faith and Credit Clause." Maj. Slip Op. at 28. Extending the purview of this constitutional consideration via the principle of comity, the Majority Opinion states that, even in the absence of a foreign judgment, courts may choose, as a "courtesy," but not an "obligation," to defer to the court in which the first-filed action exists. Our task, however, is to determine whether our circuit court abused its discretion, not whether it declined to extend a discretionary courtesy to a foreign court.

As pointed out by Judge Chasanow in his dissent in *Waicker*, "the question is whether the judge's decision that the circumstances of this case warranted a declaratory judgment amounts to an abuse of discretion. Rather than reviewing this case under an abuse of discretion standard, however, the majority appears simply to apply a rule of law, without regard to the particular considerations that prompted the circuit court to entertain the declaratory judgment action." 347 Md. at 119–20, 699 A.2d at 431 (Chasanow, J., dissenting). Here, the Majority Opinion considers the circumstances pressed by Hanover by reweighing them individually and in isolation as though we sit as an *über* trial court. Our role is not to reweigh uncontroverted facts, but to determine whether the trial court acted within a range of reasonableness:

6

The analytical paradigm by which we assess whether a trial court's actions constitute an abuse of discretion has been stated frequently. In *Wilson v. John Crane, Inc.,* 385 Md. 185, 867 A.2d 1077 (2005), for example, we iterated

> [t]here is an abuse of discretion "where no reasonable person would take the view adopted by the [trial] court[ ]". . . or when the court acts "without reference to any guiding principles." An abuse of discretion may also be found where the ruling under consideration is "clearly against the logic and effect of facts and inferences before the court[ ]" . . . or when the ruling is "violative of fact and logic."
>
> Questions within the discretion of the trial court are "much better decided by the trial judges than by appellate courts, and the decisions of such judges should be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." In sum, to be reversed "[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that courts deems minimally acceptable."

385 Md. at 198–99, 867 A.2d at 1084 (quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312–13, 701 A.2d 110, 118–19 (1997)). An abuse of discretion, therefore, "should only be found in the extraordinary, exceptional, or most egregious case." *Wilson,* 385 Md. at 199, 867 A.2d at 1084.

*Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 418–19, 914 A.2d 113, 121 (2007).

Viewed as a whole, the circumstances of this action indicate to me that the circuit court judge's decision not to dismiss the Maryland action was reasonable and not an abuse of discretion. Volkman chose an out-of-state forum, despite the dispute's pre-existing connections to Maryland, thereby introducing extraterritoriality into the equation—an element unusual certainly in light of the relevant Maryland case law that deals only with dueling pending actions in Maryland. Here, Maryland fora decided at least two aspects of the larger dispute, i.e., the employment agreement spat and the stockholder agreement stock valuation arbitration award. Maryland courts are likely

more familiar with Maryland law (the admitted governing law) than are Minnesota courts and, therefore, more likely to apply it correctly to the remaining dispute between the parties.

I would hold that, viewed in the aggregate, the factors examined in the Majority Opinion constitute "unusual and compelling circumstances" that are sufficient to reverse the Court of Special Appeals's judgment determining that the circuit court judge abused his discretion by declining to dismiss or stay the declaratory judgment action. Therefore, I would direct the intermediate appellate court to affirm the judgment of the Circuit Court for Montgomery County.